NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0108n.06

No. 08-3073

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 15, 2011**
LEONARD GREEN, Clerk

SAMUEL KIRIAZIS,

    Petitioner-Appellant,

v.

VINCENT POLITO,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: SILER, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Samuel Kiriazis appeals the district court's denial of his 28 U.S.C. § 2254 petition for habeas relief. We affirm.

I.

The circumstances giving rise to this case began when Detective John Graves received a complaint that a man named "Sam" was running an escort service out of 3237 West 25th Street in Cleveland, Ohio. Detective Graves was given a phone number; he called the phone number; and he spoke to "Sam." "Sam" read Detective Graves "some descriptions of some females" and told him that the fee was $150 per hour for "full service." Graves understood "full service" to mean oral sex or sexual intercourse. Graves booked an appointment with "Sam," and Detective Ted Thomas, who was part of the police team investigating the complaint, went to the West 25th Street address where

he met with Kiriazis and a woman. The woman took Thomas to a bedroom and told him that the fee would be $50 for sexual intercourse; however, she quickly became concerned that Thomas was a police officer and told him to leave.

Detective Neil Hutchinson then called "Sam"; was likewise informed that the fee for "full service" was $150; and was asked to leave his number and told that someone would call him back. Eventually, Hutchinson was instructed to go to 2092 West 95th Street in Cleveland, Ohio, where he met a woman named Jennine Tomazic. Tomazic took him to a bedroom, requested payment, and Hutchinson gave her $150. Tomazic then dialed the same number Hutchinson had dialed, spoke to someone she called "Sam," and stated on the phone that "[h]e's not a cop." Once she was off the phone, Tomazic and Hutchinson discussed the details of their anticipated sexual encounter, and Hutchinson gave the signal to the takedown unit. Tomazic subsequently informed Detective Hutchinson that she made $100 per day for sexual activities with clients set up by Kiriazis, and that she would pay Kiriazis $50 for each appointment.

The police next went to the West 25th Street location where they were invited inside by Kiriazis. A search of the residence revealed notebooks with information regarding approximately forty-five women, their physical characteristics, sexual preferences, and telephone numbers; an appointment notebook; and a notebook with information regarding customers, including their telephone numbers. In the appointment notebook, Detective Hutchinson's first name, "Neil," was listed with his phone number and the notation "$150"; and, in another notebook, the West 95th location was listed next to "Dave" and "$170." The police also confiscated a cell phone, which had

the number from which Hutchinson had called Kiriazis, as well as the number for Tomazic, in its call history. Kiriazis admitted that he had been running the business for a few months, that he knew the women were having sex, and that he received $50 for every encounter between the women and their customers.

Kiriazis was indicted by a grand jury on one count of Promoting Prostitution under Ohio Rev. Code ("O.R.C.") § 2907.22 for operating a brothel and on one count of Possessing Criminal Tools in violation of O.R.C. § 2923.24. He was found guilty and sentenced to six months inactive probation. Kiriazis appealed, arguing that while the evidence may have been sufficient to sustain his convictions for operating a brothel and possessing criminal tools at the location on West 25th Street, it was insufficient to sustain his convictions for the same crimes at the West 95th Street location as identified in the bill of particulars. The state appellate court affirmed, *State v. Kiriazis*, No. 82887, 2004 WL 231478 (Ohio Ct. App. Feb. 5, 2004), and the Supreme Court of Ohio declined discretionary review. *State v. Kiriazis*, 810 N.E.2d 968 (Ohio 2004). Kiriazis subsequently filed a petition for habeas corpus, which the district court dismissed. He now timely appeals.

II.

We review the district court's habeas decision de novo. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act of 1996, federal courts may only grant an application for a writ of habeas corpus for claims adjudicated on the merits in state court proceedings where the state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010); *accord Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result.]" *Taylor*, 529 U.S. at 405. Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case[,]" or if a "state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (citations and internal quotation marks omitted).

III.

Kiriazis argues that he is entitled to habeas relief because the state appellate court unreasonably applied clearly established federal law when it concluded that there was sufficient evidence that he operated a brothel and possessed criminal tools for operating a brothel at the West 95th Street location. He also suggests that the state appellate court's decision was contrary to clearly established federal law because the prosecution allegedly constructively amended the indictment by introducing evidence of his West 25th Street brothel-operating activities and possession of criminal

tools in violation of his right to due process. We address these arguments in turn.

A.

Kiriazis first challenges as an unreasonable application of clearly established federal law the state court's determination that there was sufficient evidence to support his convictions. He claims that there was insufficient evidence that he operated a brothel at the West 95th Street location because "using a building on one particular occasion does not cause that building to become a 'brothel'"; "the police admitted that they had developed no evidence to show that Mr. Kiriazis had any control or interest in the West 95th Street property . . . ."; "[a]s far as the police were concerned, any brothel was located at West 25th Street, where Mr. Kiriazis was believed to have operated a prostitution business"; and the evidence introduced at trial did "nothing to refute the very reasonable possibility that a prostitute working with Mr. Kiriazis chose to work out of her own residence, and, perhaps on only one occasion." He also reasons that, because there was insufficient evidence that he operated a brothel at the West 95th Street location, he could not have been convicted of possessing criminal tools for operating that brothel.

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), "[f]irst, we must ask whether the evidence itself was sufficient to convict . . . . [and] [t]he inquiry ends if the panel determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010) (citation omitted). Second, "[i]f we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that

a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted). The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

In this case, the Ohio Court of Appeals determined on direct review that the evidence was sufficient to sustain Kiriazis's conviction for operating a brothel at the West 95th Street location in violation of O.R.C. § 2907.22, as well as his conviction for possessing associated criminal tools in violation of O.R.C. § 2923.24(A). Addressing Kiriazis's claim that the location on West 95th Street was not a brothel, and that he did not operate it as such, the court observed that because the word "brothel" was not defined by the Ohio statute, it was to be "construed according to the rules of grammar and common usage." *Kiriazis*, 2004 WL 231478 at *3 (citing *State v. Poirier*, 2002 WL 1889590 (Ohio Ct. App. 2002)). The court then defined "brothel" as "a building in which prostitutes are available." *Id.* (quoting Merriam Webster's Collegiate Dictionary 146 (10th ed. 1996)). And it concluded that "[a]ny rational trier of fact could have found that through the use of notebooks and a cell phone, appellant operated a brothel out of both the West 25th and West 95th locations" because there was evidence that Kiriazis used the notebook and cell phone to coordinate prostitution at each of those buildings. *Id.* at *3.

We agree. Contrary to Kiriazis's contention, the state did not have to prove that he had a property interest in the West 95th Street building; nor did the state have to prove that the building

was used for prostitution on more than one occasion, though the jury could reasonably have found that it was. The state had to show only that Kiriazis "establish[ed], maintain[ed], operate[d], manage[d], supervise[d], control[led], or ha[d] an interest in" a "building in which prostitutes are available," O.R.C. § 2907.22(A)(1), *Kiriazis*, 2004 WL 231478 at *3, and that he "possessed" or had "control" of the notebooks or cell phone "with purpose to use [them] criminally."[1] O.R.C. § 2923.24. It did. In the light most favorable to the prosecution, the record reflects that Kiriazis had dozens of prostitutes working for him, admitted that he had been operating the business for a few months, and had arranged for at least two clients to meet with prostitutes at the West 95th Street location, and for at least one client to meet with a prostitute at the West 25th Street location where Kiriazis kept the associated notebooks and cellular phone. Because, on this record, any rational trier of fact could have convicted, the state court's decision was not erroneous, let alone an unreasonable application of the standard set forth in *Jackson v. Virginia*, 443 U.S. at 319.

B.

Kiriazis also suggests that the state appellate court's decision was contrary to clearly established federal law because the prosecution allegedly constructively amended the indictment by introducing evidence of his West 25th Street brothel-operating activities and possession of criminal

---

[1]Inasmuch as Kiriazis appears to suggest that the state court wrongly interpreted "brothel" for purposes of the state statute, we are not in a position to second guess that decision. *See Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) (superseded by statute on other grounds) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal.").

tools. He notes that the West 25th Street location was not included in the bill of particulars and claims that, much like in *State v. Vitale*, 645 N.E.2d 1277 (Ohio Ct. App. 1994), the introduction of the West 25th Street evidence created "a grave risk . . . that [he] was convicted . . . of a felony on evidence that was not presented to the grand jury" in violation of his right to due process. (Appellant's Br., p. 7) (citing *Vitale*, 645 N.E.2d at 1279). We disagree. Unlike *Vitale*, this is not a case involving a constructive amendment to the indictment – for which prejudice is presumed – but a case involving a variance – for which prejudice must be proved. *See United States v. Piccolo*, 723 F.2d 1234, 1239 (6th Cir. 1983). While the line separating a constructive amendment from a variance is often blurry, *see United States v. Beasley*, 583 F.3d 384, 389 (6th Cir. 2009), our decision of *Geboy v. Brigano*, 489 F.3d 752 (6th Cir. 2007), is instructive.

In *Geboy*, a habeas petitioner challenged the sufficiency of the evidence in support of his Ohio state-court convictions for gross sexual imposition, felonious sexual penetration, and rape. *Id.* at 756-57. The victim was the petitioner's daughter, and the bill of particulars listed "the home of the Defendant and victim" as the specific location where the criminal offenses at issue occurred. *Id.* at 758. The evidence at trial, however, pointed to criminal sexual activity at several other locations and did not include much, if any, evidence of such criminal sexual conduct at the family home. *Id.* at 758-60. The petitioner in *Geboy* therefore argued that the evidence adduced at trial was insufficient to support his convictions for the crimes charged at the location identified in the bill of particulars; and, by the same token, he argued that he could not have been convicted for his criminal conduct at the other locations proved at trial without constructively amending the indictment in

violation of his right to due process. *Id.* at 757, 760. We rejected these claims.

We explained that the reason the claims failed is that, while the bill of particulars listed a location where the charged offenses allegedly occurred, location was not an element of the offense, and the indictment did not identify or restrict the location where the charged offenses occurred. *Id.* at 757, 762. We emphasized that "the sorts of details supplied in a bill of particulars typically do not qualify as elements of the offenses charged in an underlying indictment" and that "provid[ing] more detailed allegations in a bill of particulars that differ from the evidence at trial, . . . does not elevate these additional details into 'elements' that must have been included in the indictment." *Id.* at 762-63 (citing *State v. Webb*, 596 N.E.2d 489, 491 (Ohio Ct. App. 1991)) (other citations omitted). Thus, we held that "the discrepancy [between the location where the criminal conduct occurred as identified in the bill of particulars and as evidenced at trial] is properly characterized as a mere variance, and the relevant question is whether the defendant was prejudiced by this variance." *Id.* (citations omitted).

The same reasoning applies in the present case. Location is not an element of operating a brothel in violation of O.R.C. § 2907.22(A)(1) ("[n]o person shall knowingly . . . [e]stablish, maintain, operate, manage, supervise, control, or have an interest in a brothel") or of possessing criminal tools in violation of O.R.C. § 2923.24 ("[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally"). Accordingly, the fact that the evidence at trial included more than just the West 95th Street location was a variance, and, to prevail, Kiriazis must demonstrate prejudice. *See Geboy*, 489 F.3d at 763-64;

*United States v. Hart*, 70 F.3d 854, 860 (6th Cir. 1995) (citation and internal quotation marks omitted) ("[A] variance is immaterial if it does not impair the defendant's ability to defend himself through failing to identify the nature of the charge."); *cf. United States v. Miller*, 471 U.S. 130, 134-35 (1985) (stating that a variance affects the defendant's substantial rights when he is prejudicially surprised or the fairness of his trial is prejudiced.).

Kiriazis does not argue that he was prejudiced by the variance; nor could he succeed if he had. The investigation and the criminal conduct related to the West 95th Street and West 25th Street locations were thoroughly intertwined: Kiriazis arranged meetings between men and prostitutes at both locations, and Kiriazis was arrested at the West 25th Street location, along with the notebooks and cell phone he used to run the entire operation. Kiriazis therefore knew his activities at the West 25th Street location would be the subject of testimony at trial, and he had the opportunity to cross-examine the three detectives who were involved in the investigation. Accordingly, we hold that the state's failure to list the West 25th Street address in the bill of particulars, while introducing evidence related to that address at trial, was not prejudicial. *Cf. United States v. Puttick*, 288 F. App'x 242, 245-46 (6th Cir. 2008) (holding that "Puttick . . . has not shown that he was prejudiced by [a variance]" because he "had ample notification of the charges against him. . . ."); *United States v. Arnold*, 890 F.2d 825, 829 (6th Cir. 1989).

IV.

For these reasons, we affirm the judgment of the district court.