[Cite as *State v. Weber*, **2013-Ohio-3172.**]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.    25508 |
| v. | : | T.C. NO.    11CR3379 |
| ROBERT WEBER | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___19th___ day of ___July___, 2013.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

WILLIAM GALLAGHER, Atty. Reg. No. 0064683, The Citadel, 114 E. 8th Street, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

        **{¶ 1}**   This matter is before the Court on the Notice of Appeal of Robert

Weber,
filed November 30, 2012. Weber appeals from his October 31, 2012 Judgment Entry of Conviction on one count of rape (less than 13 years of age), in violation of R.C. 2907.02(A)(1)(b); one count of rape (less than 10 years of age), in violation of R.C. 2907.02(A)(1)(b); and one count of rape (less than 10 years of age), in violation of R.C. 2907.02(A)(1)(b), all felonies of the first degree.

{¶ 2} Weber was initially indicted, on January 30, 2012, on three counts of rape (less than 13 years of age), and one count of gross sexual imposition; he was subsequently indicted, on June 14, 2012, on two additional counts of rape (less than 10 years of age). The matter was tried to a jury, and at the conclusion of the State's evidence, following Weber's motion for an acquittal, the trial court dismissed two rape charges and the gross sexual imposition charge from the initial indictment. Following guilty verdicts on the remaining counts, the trial court sentenced Weber to 10 years to life on the rape charge in the initial indictment; to life imprisonment with the possibility of parole in 10 years on count one in the second indictment; and to 15 years to life on count two of the second indictment, all to be served consecutively, for an aggregate term of 25 years to life. The court also designated Weber a Tier III sex offender.

{¶ 3} The victim herein is Weber's step-daughter, A.H. At trial, A.H. testified that her date of birth is June 10, 1999, and that she is 13 years old. She testified that when she was seven years old and living in Westlake, Ohio, with her mother and Weber, she and Weber got into a "tickle fight," and "while he was tickling me, he went down to my private area and then moved his hand back up. And I put his hand back because it - - it tickled. And he said I shouldn't do that. And when I asked why he said that he'd tell me another

day if I really wanted to know." A.H. stated that her "private area" was her genital region. A .H. stated, "a few days after that," Weber "brought it up again," and they discussed "what sex was and what types of sex there were and the dangers there were and the diseases you could get from it." A.H. stated that Weber told her to "keep it a secret and not to tell anybody." She stated that when Weber first spoke to her about sex, he did not touch her. She stated that it was "a continuing discussion."

{¶ 4} According to A.H., when she "was 8, around there, * * * he asked me if I wanted to learn more. * * * And when I said yes, he said that I would have to not tell anybody. So I agreed not to tell anybody again. And after that he started touching me." A.H. stated that one day she "took off my clothes and he showed me the parts that I had," by means of a mirror, and "he showed me the parts that - - that he had." According to A.H., one "of the times he brought up whether I wanted to touch him or not or, you know, whether I wanted to learn more or try something new." A.H. stated she touched Weber's penis with her hand "after I was 8," but before she was 10. She stated that she moved her hand back and forth.

{¶ 5} A.H. further testified that she "was around 9 when [Weber] asked me again if I wanted to learn something new. And he said that it had to be confidential again and that I couldn't tell anybody. And I agreed to that. And that's when he started the oral sex part of the stuff that he did." A.H. stated Weber "was touching me in the beginning, but later, I was touching him." A.H. stated that Weber would "lick" her clitoris. She stated that she later "had to suck on his penis." According to A.H., Weber would ejaculate onto his stomach, but "he had me start swallowing it after I was 9. I'd at least turned 10."

{¶ 6} According to A.H., "when I turned 11 he - -he again asked me if I wanted to learn anything else and that it would be confidential and I said yes. And he started having vaginal sex with me." When asked if Weber used a condom, A.H. stated that he "tried to use one the first time, but I said that it hurt * * * he didn't use one all of the other times that we had vaginal sex * * *." A.H. stated that Weber "would have me get off of him before he ejaculated and then he'd ejaculate onto his stomach or shirt."

{¶ 7} A.H. stated that she had vaginal sex with Weber on the evening of July 13, 2011, on the couch in their game room, while her mother was at the "fitness center." She stated that she lived in Montgomery County at the time. A.H. stated that she disclosed the abuse to her mother on July 14, 2011, after her mother found A.H. and Weber sleeping on the couch in the game room that morning. A.H. stated that she initially "told her that nothing was happening. And * * * she asked me again and I told her all about what had been happening since I was 7. But I wrote it down because I couldn't tell her because it just - - I didn't know how to so I wrote it." A.H. stated that her mother called the police and that she was taken to the hospital.

{¶ 8} When asked, "was there anything that led up to the vaginal sex" on July 13, 2011, A.H. replied, "I don't remember," and when asked, do "you remember anything about the days prior whether you had vaginal sex or not," she again replied, "I don't remember."

{¶ 9} The following exchange occurred:

Q. * * * When you were younger, you were talking about the Defendant touching your body in different places. Did he ever touch your chest area?

A. Yes. But that didn't happen until I was around 10.

Q. * * * and what changed with your body at that point?

A. I started to grow there. So he - - he could touch - -

Q. Would he ever leave any marks when he would touch that area?

A. Yes. One point he - - he did leave marks and my mom saw then. And I - - I said that it was nothing. I told her that I'd run into a wall.

* * *

Q. * * * When you were doing these things with the Defendant, did you ever enjoy it?

A. After a while, yes.

Q. When you finally told someone about this, did you feel you had betrayed him?

A. Yes. Because I told him that I would keep it as a promise and that I wouldn't tell anybody. And even though he's done these things to me, I still felt that I'd betrayed him by telling somebody.

{¶ 10} Mary Elizabeth Lacher testified that she is employed at Dayton Children's Emergency Room, and the State tendered her as an expert in pediatric emergency room medicine. She stated that she examined A.H. on July 14, 2011, and that as a result she found that A.H.'s "hymen is not intact inferiorly," and that there was no active bleeding. Lacher stated that the hymen is "a round thin membrane, that is normally, in a non-sexually active person, is intact." Lacher stated that the condition of A.H.'s hymen is consistent with sexual activity.

{¶ 11} A.H.'s mother, M.S., testified that she and Weber were married on

September 17, 2007, and that she lived with him for two years prior to their marriage. She stated that after briefly residing in Georgia, they moved to Kettering, Ohio, "the summer that [A.H.] turned six." From Kettering, M.S. stated that her family moved to Westlake, a suburb of Cleveland in Cuyahoga County, where they lived from sometime in 2006 to June, 2008, at which time they moved to Franklin County, where they resided until June, 2009. M.S. testified that from Franklin County, they moved to Miami Township, in Montgomery County, where they resided until July 14, 2011.

{¶ 12} Brenda Miceli testified that she is a licensed psychologist in private practice, and that she has been qualified as an expert in child psychology and child sexual abuse. When the state requested that Miceli "be declared an expert in the dynamics of child sexual abuse," defense counsel did not object, nor did he object at all in the course of her direct testimony, which was addressed to behaviors that children who have disclosed sexual abuse may or may not exhibit. She discussed "internalizing," "externalizing" and "sexualized behaviors." Miceli also described the "grooming process" that typically occurs, and that allows an abuser to determine if a child is likely to reveal the abuse. On cross-examination, Miceli stated, "I think I need to be clear here that my job is never to determine whether or not a child is telling the truth." She stated that her role at trial was not to opine on A.H.'s credibility. On redirect examination, Miceli stated that she was not asked to determine whether A.H. was telling the truth about the abuse. When asked why she did not speak to A.H. about the allegations, Miceli replied, "Because my role is not her therapist or to determine whether or not abuse has occurred."

{¶ 13} After Miceli testified, in the absence of the jury, the State moved the court to

amend count one of the second indictment as follows: "Instead of the county of Montgomery, * * *  it would read in the county of Cuyahoga, as part of continuing course of conduct that ultimately ended in Montgomery County."  The State also moved the court to amend count two of the second indictment "to say instead of the county of Montgomery, the county of Franklin, and then the similar language of as part of a continuing course of conduct that * * * resulted in conduct in Montgomery."  The State directed the court's attention to *State v. Hensley*, 2d Dist. Montgomery No. 11410, 1990 WL 31840 (March 19, 1990), reversed, in part, on other grounds, 59 Ohio St.3d 136, 571 N.E.2d 711 (1991) (holding that Hensley was not entitled to a separate trial on one count of an indictment alleging rape of a child in Clark County, unlike the other 14 counts in the indictment which allegedly took place in Montgomery County, and noting that it "is well established that a series of sex offenses against children under thirteen years old does constitute a 'course of criminal conduct' for purposes of R.C. 2901.12(H))"; and *State v. Williams*, 53 Ohio App.3d 1, 557 N.E. 2d 818 (10th Dist. 1988) (citing R.C. 2941.08(F), which sets forth certain defects that  do not render an indictment invalid, and noting that since "the [12 count] indictment alleged once that an offense had occurred in Franklin County, the indictment was sufficient.  Therefore, counts two through twelve should not have been dismissed for lack of venue.").

**{¶ 14}**    Weber objected as follows:

* * * First, this begs the question the indictment (sic) that came June 14th, 2012, clearly and unequivocally states Montgomery County.  This doesn't allege a course of conduct.  It doesn't allege Franklin County.  It

doesn't allege Cuyahoga County. It specifically says Montgomery County. So the question is what changed between - - the first case was filed January 30th of 2012. What changed in the Prosecutor's Office to make them allege, when they presented this case to the grand jury, * * * that the two crimes alleged * * * in the B indictment occurred here. Now I don't know if there was something presented to the grand - - there must have been something presented to the grand jury to make the grand jury believe that. Whether or not that information was false or inconsistent, it would certainly, I think, go to a particularized need to review that testimony unless it's just plain sloppy. I don't know the answer to that, because I didn't indict the case. But, clearly, there was no new evidence that was produced, I don't believe. At least there was no new evidence from discovery that was provided to me. So it just appears to me, Your Honor, that it's paintly (sic) unfair, a, to allege a course of conduct at this point, especially when the subsequent indictment is for years prior to the indictment that is - to the counts alleged in the A indictment. I, for the life of me, don't understand the variance. And I would submit, Your Honor, that the State's request, a, to amend the indictment, be denied. And b, that if the Court is so inclined to allow the amendment, to find that there's no course of conduct, under 2109.12, for purposes of venue. I mean it's reverse course of conduct it seems to me, if there is one at all.

{¶ 15} The court responded as follows:

Well, I was looking at the *Hensley* case, because I was intimately

involved with the filing of the charges of that particular case when I worked in the Montgomery County Prosecutor's Office. So I just am giving disclosure with that. I had been concerned about the issue of venue myself and did some research. And I believe that 2901.12(h), that I have to follow it, because that statute reads when an offender is part of a course of conduct -- course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those occurrences or any element of one of those offenses occurred without limitation on the evidence that may be used to establish the course of conduct, any of the following is prima facie evidence of a course of criminal conduct.

One, the offenses involve the same victim or victims or the same type or of -- or from the same group.

Two is not applicable, because that deals with the employment, but it could be also, because it says the offenses were committed by the offender in the offender's same employment or same capacity or relationship to the other. He was stepfather in all of these situations. Whether they were married or not, he was in that position. The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective. Maybe.

The offenses were committed in furtherance of the same conspiracy or must -- the offenses involve the same or a similar modus operandi; or,

Six, the offenses were committed along the offender's line of travel in the state, regardless of the offender's point of origin or destination.

I think that there is sufficient evidence to allow that, although I do believe that it is kind of sloppy to wait till the last minute to do that, but the law allows it. So I'm going to overrule your objection.

{¶ 16} After the court overruled Weber's objection to the amendment, the State indicated as follows:

* * * Just for the record, I would note that the Defendant was aware of the allegations of acts in these other counts. That was part of the discovery that we did supply to defense. So in terms of any change as far as the county and stuff, they - - we did provide discovery as to where the different parties lived and how old the child was. For purposes of at least determining prejudice - - and this is just for the record. * * *

{¶ 17} After the State's exhibits were admitted, defense counsel moved the court "to find the evidence insufficient to allow this matter to go to the jury on all counts contained in both indictments." The court overruled the motion as to Count I of the first indictment and Counts I and II of the second indictment, and it sustained the motion as to Counts II, III, and IV in the first indictment.

{¶ 18} Weber testified, and he denied A.H.'s allegations.

{¶ 19} Weber asserts five assignments of error herein. We will first address his third assigned error for ease of analysis. It is as follows:

A TRIAL COURT CANNOT PERMIT AN INDICTMENT TO BE

ENLARGED BY AMENDMENT. IT CREATES AN UNCONSTITUTIONAL RISK A DEFENDANT WILL BE CONVICTED OF A CHARGE NOT PRESENTED TO THE GRAND JURY. THE TRIAL COURT ERRED BY ALLOWING THE STATE TO AMEND THE INDICTMENT AFTER THE TRIAL IN VIOLATION OF CRIMINAL RULE 7, AND SECTION 10 ARTICLE I OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶ 20}** Weber asserts that while "the amendment in this case did not change the identity or name of the offenses it did expand the charges to a different jurisdiction and creates a risk Weber was convicted on evidence not presented to the Grand Jury." Weber relies upon *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist. 1994).

**{¶ 21}** The State responds that a "trial court is permitted to amend an indictment by inserting the county were the offense was committed as long as the accused was neither misled or prejudiced in his defense by the defect in the indictment," in reliance upon *Williams*, *supra.* The State further asserts that "Weber was not misled by the amendment because the State had provided discovery regarding the different places where the parties lived and the age of the child as it pertained to the various allegations." Finally, the State asserts that "Weber suffered no prejudice to his defense as a result of the amendment to change the name of the county where one of the rapes was alleged to have occurred, because Weber's defense was a complete denial of guilt, *i.e.*, that A.H. lied. Because Weber claimed the sexual abuse never occurred, his defense was in no way prejudiced by the

amendment * * *."

{¶ 22}    We initially note that the trial court relied upon R.C. 2901.12, concluding that "sufficient evidence" existed to amend the indictment.  R.C. 2901.12 governs venue, and section (H), cited by the trial court, provides in part as follows:

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.   Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima facie evidence of a course of criminal conduct:

(1) the offenses involved the same victim * * * .

{¶ 23}   The amendment of an indictment is governed by Crim.R.7(D), which provides:

The court may at any time before, during, or after a trial amend the indictment * * * , in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.  If any amendment is made to the substance of the indictment, * * * or to cure a variance between the indictment, * * * and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in

respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. * * *.

**{¶ 24}** As this Court has previously noted:

Crim.R. 7(D) embodies the protections guaranteed by Section 10, Article I of the Ohio Constitution, which: "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." *State v. Strozier* (Oct. 5, 1994), Montgomery App. No. 14021, at * 2, quoting *State v. Headley* (1983), 6 Ohio St.3d 475, 478-79, 453 N.E.2d 716. An amendment that changes the name or identity of the offense charged constitutes reversible error, regardless of whether the defendant can show prejudice. See id. For amendments that do not change the name or identity of the offense charged, the defendant is entitled to a continuance "unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." Id, quoting Crim.R. 7(D). *State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002-Ohio-3490, 2002 WL 1438648 at * 2-3.

**{¶ 25}** Honeycutt was indicted on two counts of menacing by stalking and a

violation of a protection order, and his indictment was amended on the second day of trial. The indictment initially referred to events "on or about September 11, 2000," and it was amended to refer to events "between April, 1999 and September 11, 2000." Like Weber, Honeycutt relied upon *Vitale* to assert that the indictment was improperly amended. This Court noted as follows:

> The amendment in this case did not change the name or identity of the crime charged. Honeycutt was charged with menacing by stalking, and the amendment to the indictment did not change that fact. However, the amendment did change the date of the alleged pattern of conduct for which Honeycutt was charged. Honeycutt cites *State v. Vitale* * * * for the proposition that a change in the date of the offense is a change to the identity of the crime. In *Vitale*, the defendant had been charged with committing a crime on June 14, 1991. The indictment was subsequently amended to include actions between June 14, 1991 and June 21, 1991. The court in *Vitale* concluded that the amendment was a change to the identity of the crime because the indictment was changed to include completely different crimes that occurred at a different time and a different place. See id. at 700-01, 645 N.E.2d 1277.

> We believe that the instant case is distinguishable from *Vitale* in two key respects. First, Honeycutt was charged with a pattern of conduct.[1]

---

[1] R.C. 2903.211 prohibits menacing by stalking and provides, "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause

Amending the indictment to include incidents occurring between April of 1999 and September 11, 2000 did not change the fact that he was charged with a pattern of conduct. The amendment in *Vitale* added separate crimes to the indictment for which the defendant had not been charged. See id. Second, the bill of particulars in this case put Honeycutt on notice that the state would be including incidents occurring prior to September 11, 2000. The bill of particulars alleged that the September 11, 2000 phone call "and the events of the prior conviction" constituted a pattern of conduct under R.C. 2903.211. In *Vitale*, the bill of particulars referred only to June 14, 1991. See id. at 700, 645 N.E.2d 1277. Furthermore, *Vitale* stands for the proposition that the state "should be restricted in its proof to the indictment and the particulars as set forth in the bill." Id., citing *State v. Miller* (1989), 63 Ohio App.3d 479, 485-86, 579 N.E.2d 276. The state in this case did restrict its proof to the indictment and the bill of particulars. Therefore, we conclude that the amendment did not change the identity of the crime.

While Honeycutt may have been entitled to a reasonable continuance based on the amendment, he failed to request one. Therefore, we will not consider whether he was entitled to it. *Honeycutt*, 2002 WL 1438648, at * 3.

**{¶ 26}** We further find *Kiriazis v. Polito*, 410 Fed.Appx. 958 (6th Cir. 2011) to be instructive. Therein, Kiriazis, who was charged with operating a brothel, also relied upon

---

mental distress to the other person."

*Vitale*, like Weber, to assert that the introduction of evidence of a location distinct from that in the bill of particulars amounted to a constructive amendment of the indictment. *Id*., 962. The Sixth Circuit determined, "Unlike *Vitale*, this is not a case involving a constructive amendment to the indictment - for which prejudice is presumed - but a case involving a variance - for which prejudice must be proved." *Id.* According to the Sixth Circuit:

> Location is not an element of operating a brothel * * * . Accordingly, the fact that the evidence at trial included more than just the West 95th Street location was a variance, and, to prevail, Kiriazis must demonstrate prejudice. *See* [*Geboy v. Brigano*, 489 F.3d 752 (6th Cir. 2007)]; *United States v. Hart*, 70 F.3d 854, 860 (6th Cir. 1995)(citation and internal quotation marks omitted)("[A] variance is immaterial if it does not impair the defendant's ability to defend himself through failing to identify the nature of the charge.")
> * * * . *Id*., 963.

{¶ 27} As this Court has previously noted, "'Whether an amendment changes the name or identity of the crime charged is a matter of law.' * * * Hence, we review this question de novo." *State v. Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 22.

{¶ 28} "If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment." *Id.*, ¶ 23. As the Supreme Court of Ohio determined:

> "Abuse of discretion" has been defined as an attitude that is

unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 29}** Weber concedes that the amendment to the indictment did not change the name or identity of the rape offenses set forth in the second indictment, and we conclude that the matter herein is distinct from *Vitale*. We further conclude, as in *Kiriazis,* that since the amended indictment conforms to the evidence adduced at trial regarding the location of the rape in Cuyahoga County, as opposed to Montgomery County, the trial court did not abuse its discretion in allowing the State to amend the indictment with respect to "a variance with the evidence." Crim.R. 7(D). In other words, prejudice is not demonstrated. Further, the amended language regarding "a course of criminal conduct," pursuant to R.C. 2901.12(H), relates to venue and did not prejudice Weber, as he was charged with a series of sex offenses against the same victim. Finally, as in *Honeycutt*, while Weber may have been entitled to a continuance, he did not request one. There being no merit to Weber's third assigned error, it is overruled.

{¶ 30} We will next consider Weber's first assigned error. It is as follows:

A CONVICTION BASED UPON INSUFFICIENT EVIDENCE IS A VIOLATION OF DUE PROCESS OF LAW. THERE IS INSUFFICIENT EVIDENCE TO ESTABLISH THE OFFENSE ALLEGED IN COUNT ONE OF THE "B" INDICTMENT OCCURRED IN CUYAHOGA COUNTY BEYOND A REASONABLE DOUBT.

{¶ 31} According to Weber, no "evidence [was] ever presented to establish in which county West Lake is situated. Calling it a 'suburb of Cleveland' without further information does not provide the proof necessary to establish this essential element of an offense beyond a reasonable doubt." The State responds that since "at least one of the crimes committed as part of that course of conduct occurred in Montgomery County, venue for prosecution of all crimes committed was proper in Montgomery County."

{¶ 32} "Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct. * * * Yet, in all criminal prosecutions, venue is a fact that must be proved at trial unless waived. * * *." *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1342 (1981). Crim.R. 18 provides that "[t]he venue of a criminal case shall be as provided by law." *See* R.C. 2901.12(H), above.

{¶ 33} Weber did not assert in the trial court that the State failed to prove venue for count one of the second indictment, "and he cannot raise that issue for the first time on appeal." *State v. Bridgeman*, 2d Dist. Champaign No. 2010 CA 16, 2011-Ohio-2680, ¶ 9. "'However, failure to prove venue is a defect affecting a substantial right and is subject to review under the plain error doctrine.'" *Id*.

{¶ 34} Count one of the second indictment was amended to allege that A.H. was

raped in Cuyahoga County between the dates of June 1, 2006 to June 30, 2008. A.H. stated that Weber began engaging in oral sex with her when she was "around 9," and the following exchange occurred in M.S.'s direct testimony:

Q. * * * I want to make sure I'm clear on your actual move dates here.

When you were living in West Lake, that was in Cuyahoga County, is that right? It's around Cleveland?

A. Yes.

Q. Okay. And that was sometime 2006 to around June 2008, is that right?

A. Yes.

{¶ 35} Since evidence was adduced that one of the indicted offenses occurred in Cuyahoga County as part of a course of criminal conduct, Montgomery County, where another indicted offense occurred, was a proper venue for count one of the second indictment, pursuant to R.C. 2901.12. Plain error is not demonstrated, and Weber's first assigned error is overruled.

{¶ 36} Weber's second assigned error is as follows:

TRIAL COUNSEL HAS A LEGAL OBLIGATION TO ACT AS AN EFFECTIVE REPRESENTATIVE FOR AN ACCUSED WHICH INCLUDES RAISING ISSUES OF VENUE WHEN THE EVIDENCE FAILS TO ESTABLISH THE ELEMENT BEYOND A REASONABLE DOUBT. WEBER'S CONSTITUTIONAL RIGHT TO EFFECTIVE REPRESENTATION OF COUNSEL WAS VIOLATED WHEN TRIAL

COUNSEL FAILED TO MOVE TO DISMISS A COUNT OF THE INDICTMENT FOR FAILING TO PROVE VENUE.

**{¶ 37}** Weber asserts that defense counsel was ineffective for failing to argue in his Crim.R. 29 motion that the State failed to establish venue for count one of the second indictment.

**{¶ 38}** As this Court has previously noted:

"We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. No. 21957, 2008-Ohio-493, ¶ 31.

**{¶ 39}** As discussed above, M.S. specifically testified that the family lived in

Cuyahoga County, and venue in Montgomery County for count one of the second indictment was properly established, pursuant to R.C. 2901.12(H). Ineffective assistance of counsel resulting in prejudice to Weber is not demonstrated, and his second assigned error is overruled.

{¶ 40} Weber's fourth assigned error is as follows:

THE TRIAL COURT IS ULTIMATELY RESPONSIBLE FOR SAFEGUARDING THE FAIRNESS OF A CRIMINAL TRIAL. WHERE THE TESTIMONY OF AN EXPERT SERVES ONLY TO VOUCH FOR THE CREDIBILITY OF THE COMPLAINING WITNESS IT VIOLATES THE DEFENDANT'S RIGHT TO A FAIR TRIAL. THE ADMISSION OF THE CHILD PSYCHOLOGIST TESTIMONY VIOLATED WEBER'S RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO A FAIR TRIAL.

{¶ 41} Evid. R. 702 governs the admissibility of expert testimony. It provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or

other specialized information. * * *

**{¶ 42}** "[T]he Ohio Supreme Court has found that testimony from a psychologist on the behavioral characteristics of sexually abused children is admissible, see *State v. Stowers* (1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881, and so have we. [*State v.Bell*, 176 Ohio App.3d 378, 2008-Ohio-2578, 891 N.E.2d 1280 (2d Dist.)]." *State v. Rosas,* 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 41. "What an expert may not do is offer a direct opinion on whether a child is telling the truth. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220." *Id.*, ¶ 42. We review the admission of expert testimony under an abuse of discretion standard of review. *See Bell.* In *Bell,* as here*,* Dr. Miceli was retained by the State "to testify regarding the wide range of behaviors that sexually abused children may exhibit, including internalizing behaviors, externalizing behaviors, and sexualized behaviors." Miceli did not opine on whether the victims were sexually abused by the defendant, and this Court concluded that the trial court did not abuse its discretion in admitting the testimony as follows:

> Dr. Miceli simply offered her opinions regarding the wide range of behavioral characteristics displayed by minor victims of sexual abuse. The law clearly permits this kind of expert testimony, and Dr. Miceli did not go beyond permissible boundaries and opine whether these children were in fact abused by Bell. A thorough review of Dr. Miceli's expert testimony establishes that she possessed specialized knowledge that could aid a trier of fact in assessing whether the children actually suffered sexual abuse. *Bell*, ¶ 57.

**{¶ 43}**  As in *Bell*, we conclude that the trial court did not abuse its discretion in admitting Miceli's expert testimony.   Weber's fourth assigned error is overruled.

**{¶ 44}**  Weber's fifth assigned error is as follows:

TRIAL COUNSEL'S FAILURE TO OBJECT TO THE TESTIMONY OF THE CHILD PSYCHOLOGIST RESULTED IN A VIOLATION OF WEBER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE OHIO STATE CONSTITUTION AND THE CONSTITUTION OF THE UNITED STATES.

**{¶ 45}**  Weber asserts, "no strategy exists which justifies the failure to respond to inadmissible vouching evidence."   Having determined that Miceli's testimony is admissible, we conclude that defense counsel was not ineffective for failing to object thereto such that Weber was prejudiced.   Weber's fifth assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

R. Lynn Nothstine
William Gallagher
Hon. Frances E. McGee