[Cite as *State v. Schultz*, 2024-Ohio-405.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,
CITY OF RAVENNA,

             Plaintiff-Appellee,

- vs -

RICHARD E. SCHULTZ,

             Defendant-Appellant.

**CASE NO. 2023-P-0040**

Criminal Appeal from the
Municipal Court, Ravenna Division

Trial Court No. 2022 CRB 02707 R

---

## **O P I N I O N**

Decided: February 5, 2024
Judgment: Affirmed

---

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Thomas C. Loepp*, 3580 Darrow Road, Stow, OH 44224 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}   Appellant, Richard E. Schultz, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, finding him in violation of a protection order. At issue is whether the state of Ohio/city of Ravenna established proper venue and whether the conviction is supported by sufficient, credible evidence.  We affirm.

{¶2}   Appellant and the victim ("D.M.") were formerly married.  Due to various issues that arose between the parties, D.M. filed for and obtained a domestic violence civil protection order in January 2020 and February 2020, respectively. The terms of the order are to remain in full force and effect until January 3, 2025. Pursuant to the order,

appellant was ordered to communicate with D.M. only through the "Our Family Wizard" ("OFW" or "app") application, and such communications were required to relate to the parties' children. According to D.M., each individual using the app possesses a unique user name and either party is capable of sending email messages. The order provides that "[t]he parties shall utilize [OFW] for all communications regarding the parties' minor children. Said communications shall be limited to child-related issues and shall not constitute a violation of this consent agreement and domestic violence civil protection order."

{¶3} On October 12, 2022, at 9:35 a.m., appellant sent D.M. a message on OFW which provided:

{¶4} "You are to immediately stop preventing me from seeing my children. You have refused to respond and set up visits immediately[.] What you have done and continue to do to my children is clearly unethical and will result on [sic] consequences for you and Brandon Kohrs [sic]."

{¶5} According to D.M., however, appellant only has supervised visits with a specific supervisor who appellant must contact to set up visits. D.M. testified she did not prevent appellant from seeing the parties' children and has never blocked appellant's visitation. Indeed, she observed she had no say in when or if appellant sees the children. Moreover, D.M. stated that Brandon Kohrs was/is the guardian ad litem ("GAL") in the parties' domestic case. D.M. testified that neither she nor appellant had any input as to who the court would select as a GAL. After reviewing the message on OFW, however, D.M. maintained that appellant's communication related *not* to the parties' children, but to "consequences" to her and potentially to the GAL.

2

{¶6} Later in the morning of October 12, 2022, at 11:58 a.m., appellant sent the following message to D.M. on the app:

{¶7} "You are the only person preventing my kids from seeing me and they will eventually know this. You clearly don't care about the well-being of my kids because any ethical human being would NOT do this to children. You can lie to them and pretend anything you want to but the truth is in writing in all of these messages and I felt sad for my kids." (Emphasis sic.)

{¶8} Regarding this message, D.M. stated she did not prevent appellant from seeing the parties' children. She testified she was not in charge of when and how appellant could see the children. She further observed that even if she wished to prevent appellant from seeing the children, such an outcome was not within her control. She additionally stated she never lied to appellant. After the second message, D.M. contacted the Portage County Sheriff's Office because, she testified, she was worried for her safety. She claimed she was "alarmed" because "[t]here has been violence in the past and I said, and I was worried he was going to come after me." She testified she notified law enforcement of the messages on the afternoon of October 12, 2022, as soon as she returned home from work.

{¶9} Deputy Joshua Brown responded to D.M.'s call at her residence in the city of Hiram, Portage County, Ohio. The officer received D.M.'s statement, called the prosecutor, and determined to move forward with a violation. During appellant's testimony, he stated that he believed the protection order had been lifted when he contacted D.M. He also stated that, if he had another opportunity to re-send the first communication, he would have qualified his statement indicating D.M. would experience

3

"legal" consequences if she withheld the children. Still, appellant testified that he could "possibly" understand how D.M. may have been interpreted to imply "nonlegal" consequences, such as some form of threat. He additionally asserted that his messages were "about the children" and the order was somewhat subjective regarding the parameters of children topics the parties could or should discuss.

{¶10} After a jury trial, the trial court found appellant in violation of the protection order and this appeal follows. Appellant's first assignment of error provides:

{¶11} "The trial court erred in determining that venue had been proven."

{¶12} We initially point out that appellant did not object to the insufficiency of evidence relating to venue. Where an appealing party did not specifically argue the insufficiency of proof of venue in making his motion for judgment of acquittal at trial, it would be proper to consider proof of venue waived. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 141-142, citing *State v. Weber,* 2d Dist. Montgomery No. 25508, 2013-Ohio-3172, ¶ 33 (defendant's failure to object at trial that the state failed to prove the offense occurred in the county where he was tried constitutes waiver of the issue). We, however, find it appropriate to consider the argument under a plain error analysis since the failure to prove venue does affect a substantial right. *State v. Martin*, 10th Dist. Franklin Nos. 02AP33, 02AP34, 2002-Ohio-4769, ¶ 27; *see also State v. Woodson*, 4th Dist. Ross No. 97-CA-2306, 1998 WL 51606, *3 (Feb. 11, 1998) (plain error to an insufficient proof of venue claim).

{¶13} The test for noticing plain error is whether the outcome of the trial would clearly have been otherwise except for the error. *State v. Stallings*, 89 Ohio St.3d 280, 285, 731 N.E.2d 159 (2000); *State v. Brust,* 10th Dist. Franklin No. 99AP-509, 2000 WL

4

311921, ¶ 4, (Mar. 28, 2000). "[N]otice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." *State v. Hairston*, 10th Dist. Franklin No. 01AP-252, 2001 WL 1143191, (Sept 28, 2001).

{¶14} Venue generally refers to the proper place of trial for a criminal prosecution within a state. *See, e.g., State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12. Establishing the correct venue is necessary in order to "'give the defendant the right to be tried in the *vicinity* of his alleged criminal activity[.]'" (Emphasis sic.) *Id.* at ¶ 12, quoting *State v. Gentry*, 61 Ohio Misc.2d 31, 573 N.E.2d 220 (M.C. 1990); *see also State v. Hendrix*, 11th Dist. Lake No. 2011-L-043, 2012-Ohio-2832, ¶ 92; *State v. Webster*, 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, ¶ 78; *State v. Crowder*, 5th Dist. Delaware No. 19 CAA 01 0005, 2019-Ohio-3627, ¶16; *State v. Rivera*, 6th Dist. Lucas No. L-13-1177, 2014-Ohio-2690, ¶ 19. "The necessity of proving venue is to prevent the state from indiscriminately seeking a favorable location for trial or selecting an inconvenient forum that could disadvantage a criminal defendant." *Hendrix* at ¶ 92, citing *Meridy* at ¶ 12.

{¶15} In a criminal case, venue is not a material element, but the state must still prove venue beyond a reasonable doubt. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Venue need not be proven in express terms. *Id.* Rather, it can be established by all of the facts and circumstances viewed in the light most favorable to the state. *Id.* In addition, a trial court has broad discretion to determine the facts which would establish venue. *See, e.g., State v. Mills*, 6th Dist. Williams No. WM-09-014, 2010-Ohio-4705, ¶ 22; *State v. McVety*, 3d Dist. Logan No. 8-16-19, 2017-Ohio-2796, ¶ 10.

5

{¶16} Circumstantial evidence may be used to establish venue. *State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 24 (8th Dist.); *State v. Wheat,* 10th Dist. Franklin No. 05AP-30, 2005-Ohio-6958, ¶ 10, 13 (although no witness testified that offenses at issue occurred in Franklin County, state presented sufficient circumstantial evidence as to the location of the crime to establish venue); *State v. Martin,* 10th Dist. Franklin Nos. 02AP33, 02AP34, 2002-Ohio-4769, ¶ 27-30 (where there was no direct testimony that offense at issue occurred in Franklin County, sufficient circumstantial evidence existed to establish venue based on testimony of responding police officer that he was employed by the city of Columbus, assigned to the Franklin County area and dispatched to a specific address in the area and video that showed that location of offense was in an urban setting and there was no evidence to suggest that the offense occurred outside Franklin County); *State v. Norton,* 2d Dist. Greene No. 97 CA 112, 1998 WL 853022, *7-8 (Dec. 11, 1998) (evidence that officers employed by the Greene County Sheriff's Department investigated a burglary committed in Bath Township was sufficient to establish venue in Greene County).

{¶17} Pursuant to Ohio's venue statute, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). Consequently, the requirement of "[v]enue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." (Citation omitted.) *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000).

{¶18} With these points in mind, R.C. 2901.12 provides, in relevant part:

Case No. 2023-P-0040

(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1)    The offenses involved the same victim, or victims of the same type or from the same group.

(2)    The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3)    The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4)    The offenses were committed in furtherance of the same conspiracy.

(5)    The offenses involved the same or a similar modus operandi.

(6)    The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

(I)(1) When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or

7

Case No. 2023-P-0040

transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

{¶19} A "telecommunications device" is defined as, among other things, any instrument that facilitates telecommunication, including a computer or personal communications device. R.C. 2913.01(Y); R.C. 2901.12(I)(2). The OFW app falls squarely within the description of a telecommunications device.

{¶20} Here, D.M. lived in Portage County and, on the protection order, appellant's address is listed in Aurora, Portage County, Ohio. No evidence was offered to undermine these points. Moreover, there was nothing on record to indicate the messages were sent or received from a party not residing or located in Portage County. Also, there were no references that the parties otherwise resided, were employed, or conducted general activities or business outside of Portage County. Although there was no direct evidence submitted that appellant sent the alleged offending messages from his listed residence, and D.M. did not specifically testify she received the messages in Portage County (she stated she notified the Portage County Sheriff's Office once she returned home from work), there was adequate circumstantial evidence to establish venue. In light of these points, we conclude there was sufficient evidence to establish jurisdiction by the common pleas court, including venue.

{¶21} Further, Evid.R. 201(B)(1) permits a court to take judicial notice of generally known facts within its territorial jurisdiction. Streetsboro (D.M.'s address according to the DVCOP) and Aurora (appellant's address according to the DVCPO), and Hiram (where police located D.M. pursuant to her call relating to the alleged violation), all are within

8

Portage County, Ohio. In this respect, Portage County, as a proper venue, could be judicially noticed.

{¶22} Furthermore, even though Ohio's venue statute permits prosecution in any venue in which any element of the offense occurred, the record establishes that the only venue in which the parties might be or were located was Portage County. There was prima facie evidence that both parties lived in Portage County and that the messages were sent from the app monitored by Portage County by way of the protection order. Portage County, Ohio, was the only county with any contacts to the parties and thus Portage County was the only venue in which the evidence indicated any element of this matter occurred. Without some evidence suggesting appellant or appellee were outside of Portage County, or that no element of the crime occurred within that venue, there is no evidence to undermine, let alone refute, the circumstantial proof of venue in Portage County, Ohio. We therefore find no error, let alone plain error in Portage County exercising venue in this matter.

{¶23} Appellant's first assignment of error lacks merit.

{¶24} Appellant's second and third assignments of error provide:

{¶25} "[2.] The trial court's decision is against the manifest weight of the evidence.

{¶26} "[3.] There was insufficient evidence of the defendant's guilt."

{¶27} Appellant contends that the conviction is both based upon insufficient evidence and is also against the manifest weight of the evidence.

> When the appellant challenges both the sufficiency and the manifest weight of the state's evidence in an appeal, the appellate court need only address the manifest weight argument because the conclusion that a verdict is not against the manifest weight necessarily entails the additional holding that it is also supported by sufficient evidence.

9

(Citations omitted.) *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

**{¶28}** With this principle in mind, a court reviewing a challenge to the manifest weight of the evidence observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994). Put differently, the court must assess conflicting testimony, review rational inferences that may be drawn from the evidence, and evaluate the strength of the conclusions drawn therefrom. A challenge to the weight of the evidence requires a court to consider whether the state met its burden of persuasion. *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶ 78.

**{¶29}** Under his second and third assignments of error, appellant reiterates his argument that venue was not established. Pursuant to our analysis of his first assignment of error, this challenge lacks merit.

**{¶30}** Next, appellant claims that his testimony was sufficiently credible to establish he did not act in a reckless manner in sending the messages because (1) he believed the consequences he mentioned were legal in nature and (2) he believed the restraining order had been lifted. We do not agree.

**{¶31}** Violating a protection order is established beyond a reasonable doubt when a defendant recklessly violates the terms of "[a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." R.C.

10

2919.27(A)(1). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶32}** The evidence established that in January 2020, D.M. sought and received a five-year domestic violence civil protection order. Appellant and D.M. signed the agreement and acknowledged "I have read this Consent Agreement and Civil Protection Order and agree to its terms." Moreover, both parties agreed to use the OFW app to communicate with each other regarding their children. The order also provided that "[t]he persons protected by this order cannot give you legal permission to change or violate this order. If you violate any terms of this order, even with the protected person's permission, you may be arrested. Only the court can change this order. You act at your own risk if you disregard this warning."

**{¶33}** Appellant sent the messages, which D.M. construed as "threats" with knowledge of the duration and parameters of the protection order. Further, the content of the messages stated that D.M.'s actions of allegedly preventing appellant from seeing the children and that her "unethical" behavior will result in "consequences" for her and the GAL. D.M. testified she had no control over appellant's visitation; rather, he was required to have supervised visitation which was arranged by a third party.

**{¶34}** The jury was free to weigh the evidence and determine whether appellant's testimony was credible. Appellant was aware of the duration and scope of the order. In light of D.M.'s testimony relating to appellant's ability to visit the children, the jury could conclude the messages were not sent to facilitate amicable visitation. Instead, it could

11

reasonably conclude that appellant, with heedless indifference to the consequences, sent the messages to badger, harass, or threaten D.M. in violation of the terms of the order. The jury's verdict is not against the manifest weight of the evidence and, as such, is supported by sufficient evidence beyond a reasonable doubt.

{¶35} Appellant's second and third assigned errors are without merit.

{¶36} The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

12