*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-1447

CHARLES HIGHGATE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-80449—John Corbett O'Meara, District Judge.

Argued: February 1, 2008

Decided and Filed: April 7, 2008

Before: MERRITT, GILMAN, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Andrew N. Wise, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant.
Kevin M. Mulcahy, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.
**ON BRIEF:** Andrew N. Wise, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant.
Kevin M. Mulcahy, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

COOK, Circuit Judge. A jury convicted Charles Highgate of drug- and firearm-possession charges, and the district court sentenced him to an aggregate prison term of 360 months. Highgate appeals his conviction, arguing that a defense witness who invoked his Fifth Amendment privilege was improperly dismissed because the court did not inquire into the witness's reasonable fear of prosecution. While we agree that the district court erred in accepting the witness's blanket assertion without further probing, we affirm Highgate's conviction because we find any resulting error harmless. Highgate also appeals his sentence, arguing that the court improperly treated the Sentencing Guidelines as mandatory and inadequately explained its analysis of the 18 U.S.C. § 3353(a) factors. Because the district court's equivocation at sentencing does not assure us that it appreciated its full sentencing discretion, we vacate Highgate's sentence and remand for resentencing consistent with this opinion.

I

A

On May 8, 2004, police executing a valid search warrant at a Detroit residence saw Highgate secreting things beneath a tire in the backyard. A search of that tire revealed a loaded firearm and multiple packages of cocaine and heroin. Police who entered the home's front door surprised LaFrederick Jones, who dropped bags of drugs to the floor upon seeing the officers.

A federal grand jury indicted Highgate for being a felon-in-possession of a firearm, 18 U.S.C. § 922(g); possession with the intent to distribute heroin and cocaine, 21 U.S.C. § 841(a); and possession of a firearm during and in relation to a drug offense, 18 U.S.C. § 924(c). Jones was separately charged by state authorities.

At Highgate's trial, Officer Eric Jarmons testified that he arrested Highgate, and five other testifying officers corroborated this account. After the government rested, Highgate planned to call LaFrederick Jones as a witness, but before Jones took the stand, the prosecutor informed the court that "the marshal said that [Jones] was thinking about whether or not he could take the Fifth Amendment. And so I would hate to call him out here, throw him on the stand, until we clarified that that—you know, what's going on." Based on this development, the court called a recess, instructing defense counsel to "find out if he's going to testify."

When defense counsel returned, he first proffered that Jones would testify "that Officer Jarmons did not arrest Mr. Highgate." Instead, Jones would say it "was the female officer who arrested Mr. Highgate and brought him into the house." Counsel underscored that he would not ask Jones "anything about his conduct." The court balked, however, declaring "that is not [of] sufficient materiality, in my opinion, to affect the jury's judgment in this case." The prosecutor, countering defense counsel's assurances, asserted his right to "ask[] Mr. Jones about his conduct out there . . . to clarify this whole situation" before the jury.

With that, the court indicated that if Jones took the stand, "we're going to find out on the events surrounding . . . May 8, 2004, that he would take the Fifth Amendment, that's the end of it, he's not going to testify to anything else, and I'll ask him." Although the court opined that Jones's "taking the Fifth isn't going to be good for the Defendant," it conceded that "if [defense counsel] want[s] to put him on there and say that, [he] can do it." Defense counsel persisted, expressing doubt about Jones's legitimate fear of self-incrimination:

> It's my understanding from Mr. Jones that he already . . . has been sentenced for things he did on that particular day, so I don't understand where the whole thing about self-incrimination is coming from. If he's been convicted of the criminal conduct he did that particular day, then I don't understand [how] he can incriminate himself.

The court agreed that it did not understand, but stated, "That's the wonderful thing about the Fifth Amendment. They don't have to do anything more than say they're taking it."

After the jury returned, the defense called Jones to the stand, and the court began, "It's my understanding . . . that you would take the Fifth Amendment and not testify with regard to [the May 8] events until you had a chance to consult with a lawyer." Jones agreed and started to explain, but the court cut him off: "You don't have to explain why you don't want . . . to take the Fifth. I'm asking you is that your position, that you won't testify until you've talked with a lawyer, that you will take the Fifth?" When Jones answered in the affirmative, the court excused him. The defense then rested without objecting further to Jones's dismissal, and the jury found Highgate guilty on all counts.

B

Before sentencing, the United States Probation Office prepared a Presentence Report ("PSR") identifying Highgate as a Career Offender with a Guidelines-recommended range of 360 months to life. Although neither party objected to the PSR's calculation, the district court twice adjourned the sentencing hearing. At the first adjournment, the district court expressed "the need to counsel with others and think about the heaviness of the sentence that seems to be commanded by the sentencing guidelines." The second adjournment notified the government that the court was considering granting a downward variance.

Although these delays held promise for a sentence below the applicable Guidelines range, the sentencing hearing did not culminate with a downward variance. Rather, the court decided to impose the Guidelines-minimum 360-month aggregate sentence *instead of* a sentence "more consistent with [the court's view of] justice, morality, and all of the other considerations under 3553."

II

In challenging his conviction, Highgate argues that the trial court deprived him of his Sixth Amendment right to compulsory process when it dismissed LaFrederick Jones without any inquiry into the legitimacy or scope of Jones's claimed Fifth Amendment privilege.

We first reject the government's contention that Highgate forfeited this issue by failing to raise it before the district court. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). True, Highgate's lawyer neither asked the court to delve into the basis for Jones's assertion nor objected when the court dismissed him. We held, however, in *United States v. Gibbs*, that a witness proffer sufficiently "br[ings] the issue of the scope of [the witness's] Fifth Amendment privilege to the attention of the district court." 182 F.3d 408, 431 (6th Cir. 1999). Here, defense counsel explained how Jones's testimony would aid Highgate's case and also called the court's attention to Jones's state-court conviction, thus preserving the issue for appeal.

A defendant's right to compel testimony yields to a witness's assertion of his or her Fifth Amendment privilege when the claimed privilege is grounded on a reasonable fear of prosecution. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998); *see also In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) ("Before a witness . . . is entitled to remain silent, there must be a valid assertion of the [F]ifth [A]mendment privilege."). In this balancing of interests, the trial court must decide "whether a witness' silence is justified and . . . require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity." *In re Morganroth*, 718 F.2d at 167. We have clarified that "[a] blanket assertion of the privilege is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions." *Id.* Highgate thus invokes this circuit's general rule that a subpoenaed witness must take the stand and assert the privilege in response to particular questions.

Although a district court errs by accepting a blanket assertion without requiring the witness to take the stand, *Gibbs*, 182 F.3d at 431, we also recognize that, as a practical matter, when the witness takes the stand and "it is clear that the witness intends to invoke the privilege with respect to any question asked, 'a particularized inquiry by the court would [be] futile,'" *id.* (quoting *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993)). That said, and notwithstanding the trial court's discretion to determine whether the blanket assertion *has merit*, the court must, after all, actually "*decide* whether a witness' silence is justified." *United States v. Boothe*, 335 F.3d 522, 526 (6th Cir. 2003) (emphasis added and internal quotation marks omitted).

In this case, Jones took the stand and made a blanket assertion of his privilege, and the court credited that assertion without further probing. The court did not question if or why Jones feared prosecution or whether such a belief was reasonable. *See* JA 228 ("You don't have to explain why . . . you want to take the Fifth."). Rather, the court only confirmed that Jones would not answer any questions before consulting a lawyer. When defense counsel questioned Jones's fear of self-incrimination in light of Jones's having been sentenced already for his participation, the court conceded that it did not understand Jones's fear but said, "[T]hat's the wonderful thing about the Fifth Amendment. They don't have to do anything more than say they're taking it." JA 227. Our precedent compels the conclusion that the district court erred by not inquiring into the legitimacy or scope of Jones's claimed privilege.[1]

In such circumstances, we review the trial court's failure to make a particularized inquiry under the harmless-error standard. *See Medina*, 992 F.2d at 587 ("Although it would have been preferable for the trial judge to have engaged in a deeper inquiry into the scope of the witness' privilege, no fundamental rights were affected by the court's ruling."); *United States v. Mahar*, 801 F.2d 1477, 1497 (6th Cir. 1986) (finding court's failure to make a particularized inquiry into the scope of a Fifth Amendment privilege harmless error).

Applying this standard, we cannot conclude that the court's error affected the outcome of Highgate's trial. Had the district court denied Jones's claimed privilege and required him to testify, it is difficult to see how his testimony would have helped Highgate's case. *See Mahar*, 801 F.2d at 1496; *see also United States v. Baldwin*, 418 F.3d 575, 582 (6th Cir. 2005) ("An error is harmless 'when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003))). Defense counsel proposed that Jones would say only that an officer other than Officer Jarmons arrested Highgate, and Highgate argues this factual discrepancy casts doubt on the officers' credibility. But six officers present on the day of the arrest provided uniformly contrary testimony. More importantly, Jones's proffered testimony does not dispute any element of the offenses for which the jury convicted Highgate. Although questioning the arresting officer's credibility could marginally benefit Highgate's defense, this testimony would not have altered the jury's verdict in light of the overwhelming evidence of guilt. *See Mahar*, 801 F.2d at 1479. Therefore, the court's failure to inquire into the scope of Jones's privilege was harmless, and we accordingly affirm Highgate's conviction.

III

Highgate also appeals his sentence, arguing that the district court effectively treated the Guidelines as mandatory and failed to analyze the 18 U.S.C. § 3553(a) factors. Because we agree with the former claim, we vacate Highgate's sentence and remand for resentencing without reaching the latter.

We ordinarily review a defendant's sentence for reasonableness, which accounts for the procedural and substantive components of sentencing. *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *see also Gall v. United States*, 128 S. Ct. 586, 594, 597 (2007) ("Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar

---

[1] In so finding, we acknowledge that the record reveals Jones had at least "a colorable basis to assert the privilege in that the specter of further . . . prosecution was real." *Medina*, 992 F.2d at 586. The government suggests that his proffered testimony potentially exposed him to (1) substantive or conspiracy charges regarding the drugs that were otherwise attributed solely to Highgate, *see* 21 U.S.C. § 846; 18 U.S.C. § 924(c); (2) charges for aiding and abetting the possession of the firearm in furtherance of a drug trafficking crime, *see United States v. Franklin*, 415 F.3d 537, 554 (6th Cir. 2005) ("A defendant may be found to have brandished a firearm under an aiding and abetting theory of liability."); or (3) perjury charges. But whether such reasons actually motivated the district court to dismiss Jones, we can only guess.

abuse-of-discretion standard of review now applies to appellate review of sentencing decisions . . . . [r]egardless of whether the sentence is imposed inside or outside the Guidelines range . . . ."); *see also United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). This case implicates *Gall*'s list of "significant procedural error[s]": "failing to calculate (or improperly calculating) the Guidelines range, *treating the Guidelines as mandatory*, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597 (emphasis added).

Narrowing our review from the typical reasonableness standard is Highgate's failure to object to the court's sentence, despite being invited to offer objections after the sentencing colloquy. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Since Highgate forfeited his sentencing claims, we can correct them on appeal only if he demonstrates plain error. *See United States v. Bailey*, 488 F.3d 363, 367 (6th Cir. 2007). To do so, Highgate must demonstrate "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005); *see generally* Fed. R. Crim. P. 52(b). We find that Highgate succeeds in satisfying the plain-error standard.

The court essentially pitted the applicable Guidelines range against the § 3553 considerations and very reluctantly imposed a Guidelines-range sentence out of a misplaced sense of obligation:

> [W]hile I started out wanting to find a way I could legitimately under the law make this a sentence, which in my opinion would be more consistent with justice, morality, and all of the other considerations under 3553, that I cannot and should not do that and that I must do what I am now going to do.

JA 307. This and other like comments result in a troubling record of a sentencing court applying de facto mandatory Guidelines—a plain error that we can correct on appeal. *See United States v. Kosinski*, 480 F.3d 769, 778 (6th Cir. 2007) (holding that a district court's applying the sentencing guidelines as if they were mandatory justified vacating and remanding for resentencing); *see also United States v. Barnett*, 398 F.3d 516, 527 (6th Cir. 2005) (finding plain error where "the district court imposed a sentence based on the assumption . . . that the Guidelines were mandatory"). The court explained the delay in sentencing: "I felt the need to counsel with others and think about the heaviness of the sentence that seems to be *commanded* by the sentencing guidelines." JA 298 (emphasis added). It opined, just before announcing the sentence, that the sentence did not reflect "where justice or equity or morality would end us up." JA 306. And, the court invited Highgate to appeal, reiterating, "I don't like [the sentence]. It's too heavy as far as I'm concerned. It is the law." JA 310. The court's dilemma over a downward variance, captured on the record, amply supports Highgate's bid for our finding prejudice.

At this stage of the game, sentencing courts frustrate effective appellate review by walking mechanically through the now-advisory Guidelines, lodging their regret all the way. When a sentencing court does so, yet fails to set forth enough to satisfy the appellate court that it has "considered the parties' arguments and has a reasoned basis for exercising [its] *own* legal decisionmaking authority," *Rita*, 127 S. Ct. at 2468 (emphasis added), it is not always apparent—on a one-step-removed basis—whether the sentencing court appreciated the scope of its discretion or whether it effectively applied a mandatory regime.[2]

---

[2] One member of our panel has commented extensively on the problem of "guidelinitis," or "the system of rote sentencing in which the sentencing judge ratchets up the sentence instead of engaging in anything close to the deliberative or reflective process." *United States v. Sexton*, 512 F.3d 326, 337 (6th Cir. 2008) (Merritt, J., dissenting); *see also United States v. Jeross*, Nos. 06-2257, 06-2502, slip op. at 22 (6th Cir. Apr. 4, 2008) (Merritt, J., dissenting);

It is true that sentences in the bulk of cases continue to fall within the recommended Guidelines range; although "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *id.* at 2465, *Booker* required judges to "take account of the Guidelines together with other sentencing goals," *United States v. Booker*, 543 U.S. 220, 224 (2005). After all, the Guidelines represent the Sentencing Commission's "examin[ation of] tens of thousands of sentences and [work] with the help of many others in the law enforcement community over a long period of time." *Rita*, 127 S. Ct. at 2464. They remain "the starting point and the initial benchmark." *Gall*, 128 S. Ct. at 596. But where, as here, the district court so clearly felt constrained, rather than guided, by the Guidelines, we cannot say the sentence passes procedural muster, even after the Supreme Court's recent decisions admonishing that appellate courts should "not presume that every variance from the advisory Guidelines is unreasonable," *Rita*, 127 S. Ct. at 2467, refrain from proportionality review and instead afford district courts "the requisite deference," *Gall*, 128 S. Ct. at 598, and permit sentencing disparities within the borders of congressional control, *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007). Because the district court plainly erred in treating the Guidelines as mandatory, we vacate Highgate's sentence and remand for resentencing consistent with this decision. We express no opinion as to the substantive reasonableness of Highgate's sentence, which may remain the same after resentencing.

Inasmuch as resentencing is in order, we need not reach Highgate's related claim that the district court failed to explain its view of the 3553(a) factors. *See Rita*, 127 S. Ct. at 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). On remand, it will be explaining itself anew.

### IV

For these reasons, we affirm Highgate's conviction but vacate his sentence and remand for resentencing.

---

*United States v. Thompson*, 515 F.3d 556, 569 (6th Cir. 2008) (Merritt, J., dissenting); *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008) (Merritt, J., dissenting); *United States v. Sedore*, 512 F.3d 819, 829 (6th Cir. 2008) (Merritt, J., dissenting). Here, we need not reach to diagnose any such ills, since the district court's symptoms are self-diagnosed.