**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0461n.06
Filed: August 1, 2008

**No. 05-3408**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PATRICK JAMES PUTTICK, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.**

**Rogers, Circuit Judge.** This case is part of a consolidated appeal involving thirteen defendants who were members of the Outlaw Motorcycle Club ("OMC"), an international motorcycle club with chapters across the country and around the world. In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the OMC, which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various offenses, including Racketeer Influenced and Corrupt Organizations Act ("RICO"), drug trafficking, and firearms offenses. The defendants were tried before an anonymous jury.

Defendant Patrick J. Puttick was the boss of the "Green Region" of the OMC. The indictment leveled four charges against him: (1) substantive RICO in violation of 18 U.S.C. § 1962(c); (2) RICO conspiracy in violation of 18 U.S.C. § 1962(d); (3) narcotics conspiracy in violation of 21 U.S.C. § 841(a)(1); and (4) use of a communication facility to commit a felony under the Controlled Substances Act in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Under the RICO conspiracy count, the indictment alleged several overt acts. Puttick claims that these allegations constitute a bill of particulars. Because the Government conceded this point at trial, Puttick's claim is accepted by this court.

At trial, the Government presented evidence that Puttick had supplied cocaine to OMC member Gary Hohn, and that Puttick had participated in making drug distribution policies for the OMC. Nevertheless, Puttick was acquitted on all charges except RICO conspiracy.

At the sentencing hearing, the district court determined Puttick's base offense level to be 36, presumably based on the recommendation in the presentence report that Puttick be found responsible for 144 kilograms of cocaine. However, it is not entirely clear how the district court came to this conclusion. After establishing the base offense level, the district court enhanced Puttick's offense level by three levels based on his leadership role in the OMC. That left Puttick with an offense level of 39, which provided a Guidelines range of 292 to 365 months in prison. Despite this range, the district court ultimately sentenced Puttick to 20 years because that is the statutory maximum sentence for RICO conspiracy. Unlike with respect to most of the other defendants in this case, however, the

district court did not impose an alternative sentence under an advisory Guidelines regime. In fact, the district court expressed regret at its lack of discretion to impose a lesser sentence.

Puttick now argues that his conviction should be vacated because his rights were violated by a variance between the bill of particulars and the evidence presented at trial, and because the district court erroneously admitted an audiotaped conversation allegedly involving Puttick without first requiring that a witness identify Puttick's voice. Puttick also argues that his sentence should be vacated because the district court applied the Sentencing Guidelines as mandatory, and because the district court erroneously calculated his Sentencing Guidelines offense level.[1] Because Puttick is correct that the district court sentenced him under a mandatory Guidelines regime, his sentence must be vacated and the case remanded for resentencing. His conviction, however, is sound.

---

[1]Puttick also adopts the two arguments from co-defendant John P. Walker: (1) that the admission of post-arrest statements made by co-defendants Fowler and Carlisle was a violation of the Confrontation Clause; and (2) that the empaneling of an anonymous jury was unconstitutional. The first argument is discussed in *United States v. Walker*, No. 04-4478, __ WL __ (6th Cir. 2008), and the entire discussion need not be repeated here. Any violation of the Confrontation Clause was rendered harmless by the fact that the evidence against Puttick was so strong that he would have been convicted even if the statements had not been admitted. Likewise, any error caused by the district court's failure to give a limiting instruction with respect to Fowler's and Carlisle's statements was also rendered harmless by the overwhelming evidence of Puttick's guilt. The second adopted argument is unavailing as well. It was fully discussed in the companion case of *United States v. Lawson*, __ F.3d __ (6th Cir. 2008), and that discussion need not be repeated here.
Puttick also makes the argument that this court should modify the holding of *United States v. Booker*, 543 U.S. 220 (2005), in order to prohibit judicial fact-finding for the purposes of determining a defendant's Guidelines range. There is no need to address this argument because this court clearly cannot modify a holding of the United States Supreme Court.

As a preliminary matter, there is no real dispute that Puttick's sentence must be vacated. The Government concedes that the district court treated the Sentencing Guidelines as mandatory, and the record makes it clear that this concession is correct. The transcript of the sentencing hearing plainly shows that the district court was under the impression that it had no discretion to impose a lesser sentence on Puttick. Therefore, this court's decision in *United States v. Barnett*, 398 F.3d 516, 527-28 (6th Cir. 2005), requires that Puttick's sentence be vacated and the case be remanded for resentencing.

Because Puttick's sentence must be vacated, we do not address the argument that his Guidelines offense level was calculated incorrectly. On remand, however, we note that it would be helpful for the district court to clarify the basis for its finding that Puttick was responsible for 144 kilograms of cocaine.

Although Puttick's sentence is defective, there are no flaws in his conviction. First, his rights were not violated by a variance between the bill of particulars and the evidence presented by the Government at trial. Puttick argues to the contrary and points to the testimony of Tracy Tipton in support. Tipton testified that Puttick supplied Tipton's boyfriend, OMC member Gary Hohn, with cocaine in the amount of three to six kilograms per month for four years. Because the acts about which Tipton testified were not mentioned among the overt acts alleged in the indictment, Puttick asserts that Tipton's testimony amounts to a variance from the bill of particulars. Puttick concedes that the plain error standard applies to this claim because there was no contemporaneous objection on this ground at trial. Aside from the plain error standard, Puttick's argument fails because there

does not appear to have been a variance. And even if the admission of Tipton's testimony did amount to a variance, Puttick has not satisfied the high hurdle of plain error review because he has not shown that he was prejudiced by it. *See United States v. Williams*, 962 F.2d 1218, 1226 (6th Cir. 1992) (citing *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965) (holding that variance is not grounds for reversal unless it causes prejudice)).

There appears to have been no variance here because Tipton's testimony did not prove "facts materially different from those alleged in the indictment." *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998) (quoting *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997)). By incorporating the relevant parts of the substantive RICO charge, the RICO conspiracy charge alleges that narcotics distribution was one of the criminal activities of the RICO conspiracy. In light of this allegation, Tipton's testimony did not present a situation in which facts materially different from those alleged in the indictment were presented at trial. To the contrary, the facts presented through Titpton's testimony were directly in line with those alleged in the indictment.

Even if there were a variance, however, Puttick has not demonstrated that it rises to the level of plain error. The plain error standard requires the appellant to prove that there is: (1) an error that is plain, i.e., obvious or clear; (2) that the error affected his substantial rights; and (3) that the error's adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Highgate*, 521 F.3d 590, 595 (6th Cir. 2008) (quoting *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005)). This standard is not met here because Puttick has not convincingly shown that the district court made an error, much less a plain error. Assuming

such an error, however, Puttick has failed to show that it affected his substantial rights. The purported variance did not, as he argues, deprive him of his fundamental and substantial right to be apprised of the charges against him. Puttick had ample notification of the charges against him. He hardly went into the trial with no idea that the Government might try to prove that he was involved in narcotics distribution, when both the substantive RICO and RICO conspiracy counts alleged that drug distribution was one of the activities of the RICO enterprise, and when Puttick was also charged with one count of narcotics conspiracy. It may be true that he did not know what Tipton would testify to — or even that she would testify at all — but he was not entitled to know that information. As this court said in *United States v. Salisbury*, 983 F.2d 1369 (6th Cir. 1993), "a defendant is not entitled to discover all the overt acts that might be proven at trial." *Id.* at 1375 (citing *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978)). Thus, any variance did not affect Puttick's substantial rights. Additionally, again assuming a variance, Puttick has not met the burden of demonstrating that the variance affected the fairness, integrity, or public reputation of the judicial proceedings.

Finally, there was no error in the district court's admission of an audiotaped conversation allegedly involving Puttick. The audiotape in question contains a recording of an OMC regional meeting held in Kittanning, Pennsylvania, in August of 2002. At trial, the Government alleged that Puttick could be heard on the tape. Puttick argues that the tape was inadmissible because the Government did not present a witness to testify that it was Puttick's voice on the tape. Instead of having a witness identify the voice, the district judge — at a sidebar conference — identified Puttick's voice himself and determined that the tape should be admitted into evidence. Puttick

argues that a witness, rather than the judge, should have identified his voice. To the contrary, we find nothing wrong with the procedure used by the district court.

Rule 901(a) of the Federal Rules of Evidence requires that an audiotape be authenticated, but it does not require that it be authenticated by a witness. *See United States v. Sliker*, 751 F.2d 477, 499-500 (2d Cir. 1984). It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated. *See id*. In *Sliker*, the Second Circuit affirmed the very same procedure used by the district court in this case. In the face of an objection on the ground that the voices on the audiotape had not been identified by a witness, the district court admitted the tape based on the court's own finding — made at a sidebar conference — that "it is clear that it is [the defendant's] voice." *See id.* at 497. The Second Circuit affirmed the admission of the evidence on the basis that the district court can admit the evidence conditionally under Rule 104(b) without witness authentication and leave it to the jury to determine whether the evidence had been truly authenticated. *See id.* at 499-500. The Fourth Circuit has adopted a similar approach as well, noting that "the ultimate resolution of authenticity is a question for the jury." *See United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992). The reasoning of the Second and Fourth Circuits is compelling and comports with the language of Rule 901(a). The method of identification used by the district court was appropriate.

As in *Sliker*, any potential problem posed by the procedure used by the district court is rooted in the fact that the district court did not specifically instruct the jurors that they were the final judges

of whether the voice on the tape was that of the defendant. *See Sliker*, 751 F.2d at 500. Although not required to do so, it is preferable for the district court to instruct the jurors that they are the final arbiters of the authentication of any evidence that was admitted preliminarily under Rule 104(b). *See id*. The question of whether to give this kind of specific instruction generally "lies in the discretion of the trial judge." *Id*. In this case, it cannot be said that the district court abused its discretion by failing to provide a specific instruction since counsel failed to request one, and the district court delivered a general instruction to the effect that the jury was the sole judge of the facts. *See id*.

For the foregoing reasons, Puttick's conviction is AFFIRMED, his sentence is VACATED, and the case is REMANDED for resentencing.