# United States Court of Appeals
## For the First Circuit

No. 20-1131

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY FLETCHER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

K. Hayne Barnwell for appellant.
Abigail Frisch Vice, Bristow Fellow, Office of the Solicitor
General, United States Department of Justice, with Rachael S.
Rollins, United States Attorney, and Alexia R. De Vincentis,
Assistant United States Attorney, on brief, for appellee.

December 28, 2022

**KAYATTA**, **Circuit Judge**.  A jury convicted Timothy Fletcher of being a felon in possession of a firearm and ammunition, and of possessing cocaine and cocaine base with intent to distribute.  The district court then imposed a sentence above the range provided by the United States Sentencing Guidelines.  Fletcher requests a new trial because the district court did not allow him to call a witness who would have asserted her Fifth Amendment right to avoid incriminating herself and because one of the court's instructions ran afoul of Rehaif v. United States, 139 S. Ct. 2191 (2019).  He also raises numerous challenges to his sentence.  For the following reasons, we affirm both the conviction and the sentence.

## I.

Shortly before 10:00 p.m. on April 2, 2015, local police officers trailed Brooke Cotell, a known heroin dealer, to "Simple Storage," a storage facility in the village of Hyannis in Barnstable, Massachusetts.  An officer observed Fletcher exit Cotell's vehicle and walk toward Simple Storage, returning fifteen minutes later.  Continuing to follow Cotell's vehicle, officers observed Fletcher selling one gram of cocaine in what he did not realize was a controlled buy.  After the vehicle parked at the Clarion Hotel, the officers proceeded to execute a warrant authorizing the search of Cotell, Fletcher, the vehicle, and a room reserved at the Clarion by Cotell and Fletcher.  The officers

- 2 -

found on Fletcher's person eleven individually wrapped baggies containing what was later confirmed to be cocaine and crack cocaine. They also found on Fletcher $1,168 in cash, two cell phones, a key fob for entry to the Simple Storage facility, and a key to a U-Haul lock.

When questioned, Cotell sought to trade information for leniency, telling the officers about Fletcher's drug dealing and his use of a storage unit at Simple Storage. The officers obtained a warrant to search the storage unit. They also questioned the owner of the facility, Andrew Adair. At trial, Mr. Adair testified that Fletcher's mother, accompanied by Fletcher, had rented a storage unit one year and eight months previously, stating a desire to store her son's sneaker collection in the unit. During the ensuing one year and eight months, Mr. Adair saw Fletcher access the unit about once per month. He saw Fletcher's mother only two or three times, and never saw anyone else access the unit with Fletcher. Simple Storage's software confirmed that the fob found on Fletcher had been used to access the facility on the evening of Fletcher's arrest.

In the unit rented by Fletcher's mother, the officers found 223 boxes of sneakers, in and among which were three pistols and ammunition, bags containing 179.11 grams of cocaine, 2.89 grams of crack cocaine, cutting agents, scales, $1,420 in cash, and paperwork of various types in Fletcher's name. They

also obtained Fletcher's prints from one of the pistols and from a magazine for one of the other pistols.

Fletcher's defense at trial was that the contraband found in the storage unit did not belong to him. His counsel theorized that Cotell or a prior girlfriend, Erica Lopes, exclusively controlled possession of the drugs. Unconvinced, the jurors found Fletcher guilty of being a felon in possession of a firearm and ammunition, and of possessing cocaine and cocaine base with intent to distribute. The district court imposed a sentence of 168 months, 31 months above the top of the Guidelines sentencing range of 110–137 months.

## II.

Fletcher's first claim of error during his trial is the district court's decision not to allow him to call his mother to testify. Toward the end of the trial, the following discussion ensued:

> [Defense Counsel]: With regard to Ms. Fletcher, Your Honor, my understanding is she's going to invoke her Fifth Amendment privilege with respect to items in the storage unit. I subpoenaed her because of the very fact that I believe that this information is exculpatory to my client. I also understand that -- you know, my intention was to ask other questions with regard to Ms. Fletcher that did not pertain to the storage unit, but did pertain to conversations with Mr. Adair, or what she saw when she arrived to that unit.

My desire would be to elicit some questioning not -- that I know will not cover the immediate search or the items inside, other than to say what she found when she arrived to the Simple Storage area.

She will also talk about this individual named Erica Lopes.

She will also reference any knowledge that she might have of Brooke Cotell.

But I do know that she is going to be invoking her Fifth Amendment privilege, and as a result, I think that -- that's why I brought it to the Court's attention.

THE COURT: You're doing the appropriate thing, although I think under our rules, a witness can't be selective about what he or she chooses to testify to. Generally, if you take the oath, you -- and I can't believe that [the prosecutor] wouldn't be asking questions, and why she would take the Fifth Amendment is perfectly apparent to me.

[Defense Counsel]: Your Honor, I would -- I want to ask those questions myself, right. And so I was contacted just this past week by attorneys for Ms. Fletcher, and I do know -- the court may be aware, but she was charged in the state court for possession without -- you know, improper storage, and then that was dropped without prejudice to being refiled. That was only on the one weapon that was physically registered to her.

So, as a result, I do know -- I understand the Court's position, Your Honor, but it is -- it was our intention to call her.

I would ask, at the very least, that if she is called, that I could call her on the stand and

- 5 -

then she can invoke her Fifth Amendment privilege on the stand, Your Honor.

THE COURT: Well, as you know, in state court that would never be permitted because the rule is pretty absolute. It's a little more flexible in federal court. I think the leading case is <u>United States</u> v. <u>Johnson</u>, which it's a matter of discretion for the court. Rather than put her to the embarrassment of being on the witness stand and then being taken off . . . I would be willing to simply instruct the jury that it was the intention to call her, that she indicated that she will not testify under her Fifth Amendment right as to any matter that involves the storage locker or its contents. I think that might be better than having her on the stand in front of the jury.

So why don't we handle it that way?

Fletcher did not call his mother, and the court instructed the jury as follows:

I'm going to tell you now that he would have called his mother, T[]eresa Fletcher, but I've been informed by her lawyer that, if called, she would assert the Fifth Amendment privilege and refuse to answer any question regarding the storage locker or its content. A witness obviously can't selectively testify. So she understands that the defendant under statute will not be called.

As the foregoing excerpts from the trial transcript demonstrate, no one expressed any doubt that Fletcher's mother would invoke the Fifth Amendment privilege and refuse to answer questions "as to any matter that involves the storage locker or its contents." And given her name on the lease, the contents of

- 6 -

the locker, and the specter of refiled criminal charges in state court, no one disputed that the invocation of her right not to testify about that subject matter was justified. Finally, no one objected to the instruction given by the court.

On appeal, Fletcher now reasserts his contention that he should have been permitted to call his mother to the stand to ask specific questions such as he proposed. Instead of allowing a "blanket assertion" of privilege, Fletcher contends that the district court should have enforced the trial subpoena to bring his mother and her counsel into court and then conducted a voir dire inquiry to determine whether any lines of questioning fell outside the scope of the privilege and could be fairly explored by both parties.

As to the content of his proposed questions, Fletcher asserts on appeal that he would have elicited testimony from his mother "about her observations and knowledge of Lopes and Cotell including whether she ever saw them access the Simple Storage building or Unit 26 itself and if so, when, whether she ever saw them with the key fob and keys to Unit 26, whether she saw either of them put items in or take items out of Unit 26, whether she knew anything about their drug dealing or drug possession and/or whether she knew anything about their motivations or biases against Fletcher." Fletcher submits that this proposed testimony would have "put enough meat on the bones" of the defense's theory that

"Brooke Cotell or Erica Lopes stored the cocaine in the storage unit without Fletcher's knowledge." More particularly, Fletcher contends that the testimony would have bolstered his theory that Cotell "could have taken his keys and put the cocaine in Unit 26, allowing her to pass blame to Fletcher if she were ever caught."

We review rulings sustaining invocations of Fifth Amendment privilege for abuse of discretion. See United States v. Ramos, 763 F.3d 45, 53 (1st Cir. 2014). Generally speaking, our case law prefers that the trial court conduct a "particularized inquiry" to see whether there are specific questions that are outside the scope of the privilege and can be explored by both parties without unfairness. United States v. Pratt, 913 F.2d 982, 990 (1st Cir. 1990); see United States v. Cascella, 943 F.3d 1, 5-6 (1st Cir. 2019) (noting that "a blanket assertion . . . is 'extremely disfavored,'" but stating that "[w]e have nevertheless at least once allowed such a blanket assertion of privilege when the district court itself confirmed the witness's inability to offer any relevant, non-privileged testimony" (citations omitted)).

Here, the district court did not question Fletcher's mother or her counsel regarding the scope of her asserted privilege, nor did it provide any analysis as to how testifying about certain topics, such as general knowledge about Lopes and Cotell, could possibly incriminate Fletcher's mother. On the other

hand, this was likely the result of Fletcher's rather flimsy descriptions of what testimony he sought to elicit at trial. Certainly, Fletcher's description to the district court of the proposed testimony was much vaguer than his description on appeal. At trial, his counsel stated only that he wanted to ask questions of Fletcher's mother about (1) her "conversations with Mr. Adair"; (2) "what she found when she arrived to the Simple Storage area"; (3) "this individual named Erica Lopes"; and (4) "any knowledge that she might have of Brooke Cotell." Those vague proffers did not provide much detail to suggest that the testimony would be both relevant and beyond the scope of the privilege.

In any event, we need not decide whether the district court abused its discretion because we agree with the government that the exclusion of Fletcher's mother as a witness was harmless beyond a reasonable doubt. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986); Cascella, 943 F.3d at 6; United States v. Kaplan, 832 F.2d 676, 685 (1st Cir. 1987). "Caught red-handed" comes to mind as a fair description of Fletcher. The local police saw him -- not Cotell -- go to the storage unit before the sale; his paperwork was in the unit; his prints were on one of the pistols; he carried the key fob and the key to the storage unit; and he was carrying cocaine when arrested just after making a controlled sale. Given that evidence, no reasonable jury would find that he used the storage unit only to store sneakers. See, e.g., United States

- 9 -

v. Highgate, 521 F.3d 590, 595 (6th Cir. 2008) ("Although questioning the arresting officer's credibility could marginally benefit [the] defense, this testimony would not have altered the jury's verdict in light of the overwhelming evidence of guilt.").

**III.**

Fletcher also argues that he is entitled to a new trial due to a flawed jury instruction on the felon-in-possession charge. Section 922(g) makes it unlawful for "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g). Section 924(a)(8), in turn, makes it a crime punishable by up to fifteen years to "knowingly violate[]" section 922(g). 18 U.S.C. § 924(a)(8). In Rehaif, decided after Fletcher's verdict but before sentencing, the Supreme Court held that "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. The district court's instructions to the jury, delivered before Rehaif was decided, did not inform jurors of the need to find beyond a reasonable doubt that Fletcher knew that a crime for which he had previously been convicted was punishable by more than one year in prison. Fletcher requests a new trial on this basis.

The parties agree that we review this claim for plain error, given that Fletcher did not object to the jury instructions. Under the plain error standard, Fletcher "must show '(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . , and which (4) seriously impugns the fairness, integrity or public reputation of the proceeding.'" United States v. Burghardt, 939 F.3d 397, 403 (1st Cir. 2019) (alteration in original) (quoting United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir. 2015)).

The parties also appear to agree that the instructions were clearly erroneous, if only because the district court had no foreknowledge of the Rehaif decision. So we ask, next, whether the error was prejudicial. Id.; United States v. Guzmán-Merced, 984 F.3d 18, 20 (1st Cir. 2020). In this context, prejudicial means that, but for the error, there is a "reasonable probability" that the jury would have acquitted Fletcher on this count. Greer v. United States, 141 S. Ct. 2090, 2098 (2021).

We see no such probability. Fletcher served over four years of post-conviction imprisonment on a 2005 conviction, and an additional one year and eleven months on a 2011 probation violation. It would require something quite extraordinary to convince a jury that a person who actually served a sentence well in excess of a year did not know that his offense had been punishable by more than a year in prison. See Burghardt, 939 F.3d

- 11 -

at 404 (reasoning that a defendant's receipt of actual sentences in excess of one year "would certainly have made clear . . . that his offenses were punishable by more than one year in prison").[1]

Fletcher nevertheless points to the passage of time, his learning difficulties, his use of drugs and alcohol, and his mental illness as reasons he may not have understood the nature of his prior convictions. But nothing in the record describes the nature and severity of those afflictions in a manner that would raise a reasonable probability that jurors would conclude that Fletcher had forgotten spending over four years in prison as a result of a conviction, much less that he had also forgotten about another imprisonment of almost two years.

We therefore conclude that Fletcher has not shown a reasonable probability that a proper instruction in light of Rehaif would have resulted in acquittal. This closes out Fletcher's grounds for a new trial, so we turn to his complaints regarding sentencing.

---

[1] Fletcher argues that he "received a substantial amount of credit for time served" on the 2005 conviction and that "it is reasonably likely that he did not understand that the amount of time served in pretrial detention counted towards his sentence." See Greer, 141 S. Ct. at 2103 (Sotomayor, J., concurring in part and dissenting in part) (noting that a defendant "might not understand that pretrial detention was included in his ultimate sentence"). But the credit he received for time-served still left over four years of his sentence that he served after his conviction.

At sentencing, the district court rejected the government's argument that Fletcher qualified as a career offender and adopted a Guidelines sentencing range calculation of 110–137 months. The court then said the following:

> However, this is one of those rare cases which I think an upward departure is in order, given the nature and just astonishing criminal record that Mr. Fletcher has compiled. It is not the longest I have ever seen, but it is, certainly given his age, perhaps the most replete that I have encountered.[2] So I am going to depart upward to a sentence of 168 months.
>
> Mr. Fletcher, if you would stand, please.
>
> Mr. Fletcher, pursuant to the Sentencing Reform Act of 1984 and having considered the sentencing factors more importantly enumerated at 18, United States code, Section 3553(a), it is the judgment of the court that you be committed to the custody of the Bureau of Prisons for a term of 168 months. This term consists of a term of 120 months on Count One, and terms of 168 months on Counts Two and Three to be served concurrently with Count One.

---

[2] Fletcher's "replete" criminal history was summarized by the government in its sentencing memorandum as follows: Fletcher "indicate[d] that he ha[d] spent well over a third of his life in custody," and he had "numerous arrests and convictions for serious crimes," "repeated violations of his conditions of probation," and "many disciplinary incidents while in custody." The presentence report chronicled this record in detail.

Fletcher raises several challenges to this 168-month sentence, 31 months in excess of the Guidelines sentencing range. Three of those challenges are based on Fletcher's claims that the district court disregarded certain procedures that district courts must follow in issuing departing (as opposed to varying) sentences. He also contends that the district court did not provide adequate explanation for his sentence and that his sentence was substantively unreasonable. We address these challenges in turn.

**A.**

Fletcher contends that the above-Guidelines sentence was a departure and, therefore, that the district court erred by failing to follow certain procedures that must accompany departing sentences. Specifically, Fletcher argues that the district court (1) failed to provide reasonable notice that it was contemplating a departure under Federal Rule of Criminal Procedure 32(h); (2) misapplied Guidelines section 4A1.3(a)(4) in determining the extent of the departure; and (3) failed to set forth in writing the specific reasons why the criminal history category was inadequate, as required by Guidelines section 4A1.3(c)(1).

Before turning to these three arguments, we first consider their common premise: that the sentence reflected a departure, rather than a variance. Fletcher points out that the district court twice described its sentence as "departing" during the sentencing hearing. And on the administrative statement of

reasons form, the court checked the box for "depart[ing]" and completed the section titled "Departures Pursuant to the Guidelines Manual" while leaving blank the section titled "Court Determination for a Variance." The government nevertheless contends that the district court engaged in a variance, rather than a departure, as evidenced by the court's reference to section 3553(a) factors, which could be used to explain a variance.

We can hardly be surprised that skilled counsel for the parties can advance cogent but opposing views on whether Fletcher's above-Guidelines sentence is a departure or a variance. We have observed that "a departure is just a variance by another name." United States v. Santini-Santiago, 846 F.3d 487, 490 (1st Cir. 2017). That is because for practical purposes, there is no departure that could not be justified as a variance. Id.; see also United States v. Ríos-Rivera, 913 F.3d 38, 45 (1st Cir. 2019) ("[T]here is no discernable difference between departure and variance sentences."). Yet we have also stated that the difference between departures and variances "is hardly semantic." United States v. Miranda-Díaz, 942 F.3d 33, 40 (1st Cir. 2019); see also United States v. Díaz-Lugo, 963 F.3d 145, 153 n.1 (1st Cir. 2020) (observing, even while citing Santini-Santiago, that "we have made it luminously clear that departures and variances are not of the same genre"); United States v. Rodríguez-Reyes, 925 F.3d 558, 567 (1st Cir. 2019) ("There are significant differences between a

departure and a variance."). Although all these statements by our court are literally correct, it is fair to say that they may invite confusion. This confusion is, to a certain extent, unavoidable given that the notion of departures is largely an artifact of the pre-Booker era, "when the guidelines were mandatory and variances were little more than a gleam in the eye of the Supreme Court." Santini-Santiago, 846 F.3d at 490; see United States v. Booker, 543 U.S. 220, 259-60 (2005). But until the rules (see, e.g., Fed. R. Crim. P. 32(h)) fully reflect the implications of Booker's decree that courts can vary outside Guidelines sentencing ranges based on section 3553(a) factors (that are, in turn, broad enough to encompass the grounds for departures), we cannot entirely abandon the nomenclature.

So we treat departures and variances like two roads, one of which can always get you to every place that the other may lead, yet each of which has acquired its own set of directions. Nor, we add, are the respective directions as different as some presume. For example, while Rule 32(h) requires advance notice of the grounds for any contemplated departure, our case law requires that sentencing courts also avoid unfair surprise when adopting a variance. United States v. Vega-Santiago, 519 F.3d 1, 5 (1st Cir. 2008) (en banc) ("[W]hen proposing to adopt a variant sentence relying on some ground or factor that would unfairly surprise competent and reasonably prepared counsel, a judge must either

- 16 -

provide advance notice or, on request, grant a continuance in order to accommodate a reasonable desire for more evidence or further research.").

With the foregoing in mind, we accept Fletcher's premise that he received a sentence based on an upward departure, as the district court twice stated. We turn next to Fletcher's three arguments based on that premise.

## 1.

Fletcher's principal challenge points to the district court's failure to give advance notice of its intention to depart, as required by Rule 32(h). We review this unpreserved challenge only for plain error. Fletcher's counsel knew at the sentencing hearing that the court was departing from the Guidelines, that the court had not given notice under Rule 32(h), and that the court's rationale for the departure was Fletcher's extensive criminal history. Yet his counsel neither expressed surprise at the departure nor otherwise objected to the court's procedure. Indeed, after explaining its reasoning, the district court expressly asked counsel whether they "ha[d] anything further," to which Fletcher's counsel replied, "I do not." See Ríos-Rivera, 913 F.3d at 45 (finding forfeiture of Rule 32(h) argument where, after announcing the sentence, the district court asked if there was "anything else" counsel wanted to discuss and defense counsel replied, "That is all").

Under plain error review, Fletcher must show, among other things, that the error prejudiced him. United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006). In a case such as this, involving a purported error in adopting a departure, there is no prejudice where the district court would have properly imposed the same sentence as a variance. United States v. Laboy-Nadal, 992 F.3d 41, 43 (1st Cir. 2021).

In explaining its reasoning for the departure, the district court effectively made clear that it would have issued the same sentence under the rubric of a variance. It explained why it found the Guidelines range insufficient, particularly as to Fletcher's criminal history, without going beyond the scope of the section 3553(a) factors. More specifically, the district court explained its sentence by pointing to Fletcher's "astonishing criminal record . . . given his age." This extensive criminal history was detailed in the presentence report and the government urged that the court rely on it as a basis for a bracing sentence of 210 months.[3] Similarly, the district court's statement of reasons form indicates that the reason for the departure was

---

[3] Referring to some of Fletcher's prior convictions that were chronicled in the presentence report but not accounted for in the Guidelines calculation, the government argued that "even if they're too old to count, . . . they're important for the Court to look to consider the overall history of this defendant. He's been in and out of jail, in and out of state prison, yet he has not deterred [sic] his criminal ways."

Guidelines section 4A1.3, i.e., "that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." These considerations fall squarely within the section 3553(a) factors. See United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013) (stating that "a sentencing judge may consider whether a defendant's criminal history score substantially under[-]represents the gravity of his past conduct" as part of the "history and characteristics" factor); 18 U.S.C. § 3553(a)(2)(C) (requiring consideration of "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"). And the district court expressly stated that its sentence was based on "having considered the sentencing factors" in section 3553(a). Thus, "[e]ven if the district court imposed a departure rather than a variance, its analysis tracked the § 3553(a) factors." Laboy-Nadal, 992 F.3d at 43. In short, whether labeled a departure or a variance, Fletcher's sentence was going to be the same.

Fletcher nevertheless contends that even if the sentence could have been imposed as a variance, the lack of notice prejudiced him because, had he more notice, he likely would have "argued that he was not a hardened criminal but a man whose prior crimes were inextricably linked to his struggles with mental illness and trauma which are best addressed through treatment."

But arguments in this vein were centrally germane regardless of whether any departure was anticipated. Indeed, these arguments would have been directly relevant even if a Guidelines sentence -- or a low Guidelines sentence -- had been anticipated. And Fletcher had plenty of notice that his criminal history was especially pertinent given the government's focus on it in its objection to the presentence report, its sentencing memorandum, and its argument at the sentencing hearing. So we cannot see how Fletcher's arguments can be said to have been omitted due to lack of notice.

Fletcher refers us to United States v. Mangone, 105 F.3d 29 (1st Cir. 1997), which held that a district court's failure to provide notice before departing prejudiced the defendant because "[a]n increase of two years in time spent behind bars cannot help but affect one of the most precious rights an individual has, to live in freedom." Id. at 36. But Mangone was decided pre-Booker, before it was clear that a sentencing court could simply impose the same sentence through a variance. Moreover, in Mangone, the government stated that the Guidelines adequately addressed the enormity of the offense and did not argue for an upward sentence based on the rationale relied on by the court. Id. at 34-35. So the defendant in that case had far less reason to anticipate an upward sentence on the grounds relied on than Fletcher had in this case, where the government expressly argued for a higher sentence

on the same basis that the district court relied on in imposing the above-Guidelines sentence.

**2.**

Fletcher next argues that an error in calculating the extent of the departure generated a gravitational pull on the district court's thinking, such that we cannot say that it would have settled on its 168-month sentence, whether by departure or variance, absent that pull. See United States v. Rodriguez, 630 F.3d 39, 43 (1st Cir. 2010) (citing Vega-Santiago, 519 F.3d at 5). Due to the lack of objection below, plain error applies to this argument as well.[4]

The alleged error here concerns Guidelines section 4A1.3(a)(4), which describes a process for departing based on the extent and nature of a defendant's criminal history. Fletcher seems to contend that because the presentence report assigned him a criminal history category of V, an upward departure should have moved him only to VI, and that such a move would have generated a range of only 120–150 months, still below the sentence of 168 months.

---

[4] Fletcher suggests that his counsel lacked the opportunity to object because the district court did not expressly state that it was applying Guidelines section 4A1.3(a)(4) at the sentencing hearing. But it was clear at the hearing that the court's rationale for the departure was Fletcher's extensive criminal history, such that section 4A1.3(a)(4) was in play.

But nothing in the Guidelines limited the district court to merely changing the criminal history category to VI. Rather, if the court felt that a category of VI also understated the extent and nature of the actual criminal history, section 4A1.3(a)(4) expressly supported an effective departure above the range generated by category VI by means of "incrementally" increasing the offense level "until [the court] finds a guideline range appropriate to the case." Such a move here, in turn, generated a range encompassing 168 months.

Two conclusions flow from the foregoing. First, it is not clear to us that any error was committed merely because the court's qualitative assessment of the criminal history drove its selection of a sentencing range. Section 4A1.3(a)(4) expressly allows adoption of a range that is "appropriate to the case." Second, the court's use of its departure authority under section 4A1.3(a)(4) to select a sentence appropriate to the case based on its assessment of the extent and nature of Fletcher's "replete" criminal history makes clear that it would have reached the same endpoint had it started out down the variance road. So Fletcher cannot show any prejudice from the alleged misapplication of section 4A1.3(a)(4) in calculating the extent of the departure.

**3.**

Fletcher argues that the district court failed to provide a written statement of reasons required by Guidelines

section 4A1.3(c)(1), which he contends was necessary for meaningful appellate review of the upward departure. The government appears to concede that we review this argument under an abuse of discretion standard, because Fletcher and his counsel would not have become aware of the court's failure to comply with the writing requirement until after the sentencing hearing. But "[t]he district court's oral explanation provided this Court with an adequate record to evaluate the appropriateness of its departure," and, given that explanation, "we believe that the district court would have imposed the same sentence" had it provided a written statement of reasons. United States v. Vázquez-Martínez, 812 F.3d 18, 25 (1st Cir. 2016). Therefore, any such error was harmless. See id.[5]

**B.**

Shifting tacks slightly, Fletcher argues that the explanation for his enhanced sentence -- whether called a departure or variance -- was inadequate. We review this argument for plain error because Fletcher did not object to the court's explanation at the sentencing hearing. United States v. Carrasquillo-Sánchez, 9 F.4th 56, 58 (1st Cir. 2021).

---

[5] For the same reasons, we reject Fletcher's challenge under section 3553(c)(2), which similarly requires a written statement of reasons. 18 U.S.C. § 3553(c)(2).

We find no plain error in the district court's explanation of its sentence. An explanation, "though brief," may nonetheless be sufficient if it "contain[s] a clear, cogent, and coherent rationale for its decision." United States v. Madera-Ortiz, 637 F.3d 26, 31 (1st Cir. 2011). All that is required is that the sentencing court "identify the main factors behind its decision"; the explanation "need not 'be precise to the point of pedantry.'" United States v. Merced-García, 24 F.4th 76, 80-81 (1st Cir. 2022) (first quoting United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015); then quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014)).

Here, the explanation that the district court gave for its sentence identified the main factors behind its decision. Specifically, the district court explained that the nature, length, and repleteness of Fletcher's criminal history, especially for someone of his age, made this a "rare case[]" warranting an upward departure. We do not find this explanation lacking.

Fletcher contends that his "age is an unremarkable fact and the Guidelines range already accounts for his criminal record." "[A] sentencing court must indicate why the defendant's situation differs from the mine-run of cases when basing an upward variance on a factor already generally accounted for by the [Guidelines sentencing range]." Del Valle-Rodríguez, 761 F.3d at 176 (citing United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006)).

- 24 -

But the district court did not merely consider Fletcher's age and his criminal record independently as two separate factors. Rather, its decision was based on the repleteness of Fletcher's criminal record (of 25 years) "given his age" (of 38), and the Guidelines range did not account for the relationship between these factors.

Moreover, "[t]he explanation must be read in light of the record as a whole," Madera-Ortiz, 637 F.3d at 31, and here the record as a whole shows why the district court thought the Guidelines range insufficient. The government pointed out in its sentencing memorandum and at the hearing that some of Fletcher's prior convictions were not considered in the Guidelines range because they had "aged out." The government also argued that the facts underlying some of Fletcher's past crimes were violent, even though the presentence report did not treat them as violent crimes. The district court concluded that precedent foreclosed treating those crimes as predicate offenses for career offender status. Finally, the Guidelines range did not account for the dozens of disciplinary reports -- many of which were violent -- that Fletcher incurred while incarcerated, which the court thought were "relevant and merit[ed] some consideration, not perhaps, decisive consideration." Accordingly, we find the district court's explanation, especially when read in light of the record as a whole, to be adequate.

Nor did the district court fail to consider mitigating circumstances. Our case law is clear that a district court "need not tick off each and every factor in a mechanical sequence" and that "we presume -- absent some contrary indication -- that a sentencing court considered all the mitigating factors and that those not specifically mentioned were simply unpersuasive." United States v. Saccoccia, 10 F.4th 1, 10 (1st Cir. 2021); see also United States v. Millán-Román, 854 F.3d 75, 78 (1st Cir. 2017) ("[W]e do not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned." (quoting United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012))). Here, the district court expressly stated that it had considered the section 3553(a) factors, a statement that is "entitled to some weight." United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014) (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)). And Fletcher points to nothing in the record suggesting the contrary.

## C.

Fletcher's final contention is that his sentence was substantively unreasonable. He argues, in the same vein as his procedural arguments, that "this is a mine-run case where the Guidelines cover the seriousness and length of his record."

The government concedes that Fletcher preserved this claim by requesting a 110-month sentence. But even under the

applicable abuse of discretion standard, "we will set aside a sentence only if the district court's determination falls outside the 'expansive boundaries' of the entire range of reasonable sentences." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). "A sentence will stand so long as there is 'a plausible sentencing rationale and a defensible result.'" United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016) (quoting Martin, 520 F.3d at 96).

We cannot say that Fletcher's sentence falls outside the range of reasonable sentences. As described above, the record contained various reasons for the district court to conclude that Fletcher's extensive criminal history was not adequately covered by the Guidelines sentencing range and brought this case out of the "mine-run" of similar cases. Therefore, we reject Fletcher's final challenge to his sentence.

**V.**

For the foregoing reasons, we affirm Fletcher's conviction and his sentence.